Birchard, J.
In this case, our great difficulty has been to ascertain the facts which are controverted in the bill and *545 answer. After the lapse of half a century, it is remarkable that a living witness has been found, by either party, capable of throwing much light upon a transaction so ancient. subjects of ordinary occurrence, the memory of few men is to-be trusted after the lapse of over forty years. The patent of the United States, executed in 1802, purports to vest in the elder Pierce the entire legal and equitable estate, in the four thousand acres of land, which is the subject of this litigation. These complainants assert that he was the mere agent of the persons entitled to the warrants, and held the legal title as trustee for them. The fact is denied in the answer, which was, that respondent’s ancestor was the owner of both the legal and equitable estate in the entire tract. We must rely upon the proof for our own conclusions.
Azariah Root, the only witness that speaks from any direct knowledge upon the subject, testifies to conversations which occurred in 1798 or ’99. He states, in substance, that Pierce said he had no interest in this and another four thousand acre tract, except for location fees and expenses; that he had not purchased any warrants at that time; and that he claimed one dollar and fifty cents, or two dollars, for locating each hundred acres, or two hundred acres for locating each quarter township of four thousand acres. This statement of itself, after so long a period has elapsed, would be of little weight were it uncorroborated by other facts and circumstances. But when we consider that, at that time, there was no way provided for satisfying the bounty land warrants issued for military services during the war of the revolution, save by uniting enough to entitle the patentee to a quarter township, and that the President of the United States refused to issue the patents so as to show the respective interests of each warrantee in the premises; there is to be found in the nature of the transaction that which would tend to fix, in the memory of one dealing in lands and warrants, a statement like the one made to Root by Pierce, even if nothing were to be gathered from the notorious fact, that nearly every patent that was issued for a quarter township, although absolute on its face, was held by the grantee in trust, *546 either • for -himself' and others, or" entirely for others.- .This' Patent was indisputably so held. The fací is established by the recitals of the elder Pierce in. sundry deeds which- are-in' evidence.- A deed executed, Oct. 16, 1801, by E.. Pierce, to the' heirs of.Moses Ashley, deceased;"contains this recital: “ .Whereas, I, Ebenezer Pierce, * * * did, oh the fourth of 4 March, 1800, * * * as agent fora-nupaber of persons, locate 4 army land warrants, among which .was. one in the name of ‘.Moses Ashley, late of'Stockbridgé, *: * for four hundred acres, ‘ being« No. 11, and one other for one hundred acres, being No. ‘ 4580; one other in the name of. Peter Maynard, for one’ hum ‘ deed acres; being'No. 4683, and .one other in the name of ‘-Samuel Phipps,,for one hundred acres, being No. 4120; all ‘ which' warrants are located in my name, in the second , section ‘. of. .the fourth township ip the seventeenth range; in -the' tract ‘of land appropriated to satisfy army warrants.” .This deed further recites conveyances of all the above warrants to Moses Ashley, which had'been issued for other than his oWh military services; .that at his death, the whole'descended to. his three-children, Mo.ses Robert, Richard Henry, and Thankful, as heirs at law, and that they are the legal owners'; that their, mother, the widow, Thankful Ashley; had' paid $10'! 50, as their natural guardian, in full'satisfaction of and-for his trouble and expense. In consideration-of which he-granted, with the usual covenants, to. warrant and defénd the title, &c. Similar recitals-and covenants are contained in 'other deeds, embracing in' all fifteen hundred- acres of the land in controversy. -, -They tend to corrobórate the evidence of Root, .and aré sufficient, in connection with it, to overthrow that, part of the answer which denies in' toto the trust alledged in the bill. The! fact being established' that E. Pierce, held only a naked legal title, coupled with an equity, equal to one dollar and fifty cents, upon each hundred acres, it by no. means necessarily follows that the whole of the remaining equity is in these complainants, and that they are entitled-to a decree. AH of these recitals and the testimony may be consistent with the hypothesis assumed, by respondent’s eounsel: That the outstanding equities of. the owners of the *547 warrants were, in some instances, extinguished by purchases, and became vested in E. Pierce after the locations were made, or after the patent itself was issued to him. That course was frequently pursued by locators of this class of land warrants; and if not pursued in this case, it is quite clear that no one can interfere with the legal title vested in the trustee save ■ those who represent the trust estate.
We come, then, to consider the extent of interest which the complainants have "shown by purchase, occupancy or otherwise, by either direct or presumptive evidence. They show.title to whatever interest Moses Byxbe had. in1 the. tracts claimed by them respectively, under deed from him. Byxbe’s title is, 1st. A defective tax deed and possession since 1804. 2d. A deed from the heirs of ,E. Pierce, dated Dec. 24, 1806, by which he acquired seven-tenths of the entire four thousand acres, or seven-tenths of all the interest in the whole tract', of which E. Pierce died seized. Byxbe, under the deed from the heirs of Ashley, acquired the right to the lands embraced in warrants 11, 4580, 4683 and 4120, amounting to seven hundred acres................... ...... .... 700 acres.
Under Charles Kilbourne, to warrant ..4506 for 100 “
“ Henry Sewall, “ “ ...1895 “ 300 “
CC cc Samuel Tilley, ...5163 100
CC cc Isaiah Tiffany, ,2175 “ 200 “
cc cc Jacob Rolph, 100 ...6409 “
c: Ebcnezer Balantine, “ 300 ... 127 “
Z. Herrick, CC ...4401 “ 100
D. Jewett, CC cc ...4452 “ 100
Thadeus Frisbee, cc cc ...4107 “ 100
Wm. Woodward, cc cc ..3876 100
Walter Dean, cc cc ... 519 300
Thos. Marshall, cc cc ,..1348 « 500
cc John Holdridge, cc cc 923 “ 200
cc Elijah Murray, it cc ..4627 “ 100 CC
cc Israel Smith. cc cc ..5066 “ 100 cc
In all, 3400 acres,
Leaving six hundred acres unaccounted for. To an undivided *548 three-tenths of this only, equal to one hundred and eighty can the defendants in any Court claim title, provided the principles of law are such as to sustain the several conveyances above mentioned. Some of these conveyances, however, are defectively executed, and others are not fully proved, as for instance, that in the name of Thomas Marshall, for five hundred acres. The conveyance in this instance was by persons representing themselves to be the. executors of Thomas Marshall, who assumed to convey, forty-three years since, under a power conferred upon them by the last will and testament of said Thomas; and the will itself is not produced, although the deed and possession have remained with Byxbe since its date. Defects of other descriptions exist as to others of them. Old conveyances, some of which were made under powers of attorney, but in the name of the attorney instead of the name of the principal; but possession of both title, papers and lands, have continued over forty years in him.
In reference to all these, we hold that time has cured the defects, and in support of a possession of such long standing, we will presume enough in their favor to sustain the titles of the occupants to all the lands which they purport to convey. It is not to be presumed that any of those persons who were once entitled to the warrants, and who, forty-three years ago, attempted to transfer .their rights to Byxbe, and who have never since set up any claim to tiiese lands, have yet any remaining interest therein. There is nothing in the case tending to show that any of the persons who are to be affected by this presumption against their equities, were ignorant of their rights, or under any disability which prevented them from asserting them in due time, or which would operate to prevent the running of the statute of limitations in an analogous case at law. We hold, therefore, that possession and time united, have vested in the complainants a perfect title in equity to all the rights which the holders of the warrants ever had to the land in controversy.
But, on the part of the complainants it is further urged, that this presumption should be extended so far as to secure them *549 in their entire possessions; that we may presume that Byxbe purchased up all the rights outstanding, from the fact that he purchased so large a proportion of the whole.
This would be pressing the doctrine of presumption far beyond what would be warranted by the law and the facts.
The respondent has already recovered, in ejectment against one of the complainants, an undivided three-tenths part of the land, which he occupies, and the complainants, by their counsel, admit that the statute of limitations would not bar the claim of the three minor heirs, whose interests are represented by respondent, Pierce,, by reason of their continued absence from the State.
The same absence, together with their infancy and ignorance of their rights until the year 1835, when they first began to assert them, prevents the lapse of time from defeating their claim. And again, the deed of 1806, from the adult heirs to Byxbe, necessarily raises -a presumption that, at its date the heirs of the elder Pierce held an interest in some of the warrants that were merged in the patent to their ancestor; else why should Byxbe at that day offer to pay the sum of five hundred dollars for a conveyance of their title ? If the whole equity was in the warrantors, save the locator’s lien, the heirs were bound to convey, on the payment of the expenses of E. Pierce in making the location and the production of the assignments. In the conveyances made by Pierce in his lifetime, his uniform charge for locating was one dollar and a half for each hundred acres. He had conveyed, in his lifetime, fifteen hundred out of the four thousand acres to the owners of warrants at that rate, and an equal charge for the residue would have left, at the date of Byxbe’s purchases from the warrant-holders, a sum not exceeding fifty dollars, as the extent to which the heirs of E. Pierce had any claim for location fees. Why should Byxbe have given more, but for the reason that he then knew that Pierce held, as to an undivided portion of the land, both the legal and equitable title ? It seems to us that the inference is, that he would not otherwise have paid that sum — that he would have *550 tendered the fees due and demanded a deed, and if not voluntarily exeouted, that he would have enforced in chancery a conveyance. The presumption arising from this portion of the evidence isj not that Byxbe had purchased in the rights of the warrant-holders to the remaining' six hundred acres, but that Pierce'had made such purchases after procuring the patent or making the locations. This presumption is supported by the patent and the ’absence of any-claim"by-any person under the’ warrants of Parker, Barnard, Jackson and Winchell, who, were entitled to the six hundred acres for .which Byxbe had no title. • The course commonly pursued in locating this class.of warrants was^ for a person owning one or. more warrants to induce - the owners of others to imite with’him,, until the .whole would be sufficient to entitle them to ,a tract of four thousand acres, when the patent" would be issued in the name of the' one authorized to surrender the warrants,-also strongly sustains" this presumption. ■ ■. ■ . • •
Under these" views, "the complainants'are entitled to a decree for ah undivided interest of all of the four thousand acre tract, except one hundred and eighty acres, .which; reduced to'-'fractions, will give to Pierce an interest in, each tract Owned by each' complainant separately," equal to nine two-hundredth •parts of the whole, or at the rate of four acres and one-half in each hundred acres, subject", however, tó'the'clainis of the several complainants as. occupying'claimánts for the value of their improvements and the- taxes which they have paid, after deducting1 the válue ,of any -rents and profits, they may-have derived from the" land. ' . '• '•’ .
', A decree may be drawn up accordingly,-referring the case to a master. < ' ..." . " " ,