## CAMDEN *v.* MAYHEW.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF WEST VIRGINIA.

No. 80. Argued November 14, 15, 1888. — Decided January 14, 1889.

When the decree of a court of equity, for the sale of a tract of land, requires the sale to be made " upon the terms, cash in hand upon the day of sale," and a person bidding for it at the sale is the highest bidder, and as such is duly declared to be the purchaser, no confirmation of the sale by the court is necessary in order to fix liability upon him for the deficiency arising upon a resale, in case he refuses, without cause, to fulfil his contract; and, if the purchaser refuses to pay the amount bid, the court, without confirming the sale, may order the tract to be resold, and that the purchaser shall pay the expenses arising from the non-completion of the purchase, the application and the resale, and also any deficiency in price in the resale.

When a purchaser at a sale of real estate, under a decree of a court of equity, refuses, without cause, to make his bid good, he may be compelled to do so by rule or attachment issuing out of the court under whose decree the sale was had; or he may be proceeded against in the same suit by rule, (or in any other mode devised by the court, which will enable him to meet the issue as to his liability,) in order to make him liable for a deficiency resulting from a resale caused by his refusal to make his bid good.

THE court stated the case as follows:

This is an appeal from a final order in the suit, in the court below, of *Mayhew, &c.* v. *West Virginia Oil and Oil Land*

*Company, &c.*, requiring the appellant Camden to pay the difference between the amount bid by him for certain real estate offered for sale, at public auction, under the decree in that suit, and the amount the same property brought on a resale had because of his refusal to comply with the terms of his bid. In the order of resale the court reserved, for future determination, the question as to his liability for any deficiency in the amount the property might bring.

The history of the proceedings out of which the present appeal arises, so far as it is necessary to be stated, is as follows:

By a decree rendered, November 17, 1883, in the above suit, it was adjudged that the West Virginia Oil and Oil Land Company was indebted, in specified amounts, to various creditors, who were entitled to be paid out of the property in question, according to certain priorities, and that upon its failure to pay them, within a prescribed time, the property should be sold at public auction, "upon the terms *cash in hand on the day of sale.*" The decree shows that William D. Thompson, Richard A. Storrs, and Heman Loomis held debts that were to be first paid, equally and ratably, out of the proceeds of sale. The other debts, made liens upon the property by the decree, were held by James H. Carrington, A. C. Worth, W. H. Beach, the Toledo National Bank, R. S. Blair, Benjamin B. Valentine and Heman Loomis.

Before the property was offered for sale, a writing was prepared purporting in its caption to be an "agreement made this —— day of November, 1883, between J. N. Camden, J. H. Carrington, W. H. Beach, A. C. Worth, Toledo National Bank, R. S. Blair, B. B. Valentine and Heman Loomis." It provided, among other things, that Camden should purchase the property, when sold under the decree, for the mutual benefit of "the parties hereto," if it sold for a sum not exceeding the aggregate amount of the claims against it, including interest and costs; that if he bought, he should, as agent and trustee of the parties, apply their claims in payment of the purchase money required at the sale, and place on record a declaration of trust showing that the property was held by him in trust

for the payment of said debts, but that it should belong to him, in fee simple, when he paid them off; the rents, issues, and profits thereof, after deducting necessary expenses, to be applied by the trustee as follows:

"1. The balance, if any, due to J. N. Camden, assignee of W. D. Thompson, shall be fully paid. 2. Then forty per cent of the proceeds of said property shall be paid to Heman Loomis and sixty per cent thereof to the said Carrington, Worth, Beach, Toledo National Bank, Blair and Valentine, according to their rights and priorities, as fixed by the said decree, as between the six parties last named, until they and each of them are fully paid. 3. Then sixty per cent of said proceeds shall be paid to said Carrington, so far as to reimburse and indemnify him such sums of money, if any, as he may be held liable for as maker, acceptor, or indorser of two certain bills of exchange, for the payment of which the said West Virginia Oil and Oil Land Company is primarily liable, one of which bills is supposed to be held by Marietta Arnold, of Michigan, and is for the sum of $1500, and the other is held by the National Bank of Commerce in New York, and is for the sum of $2431.39. 4. After the payment of the foregoing amounts the said property shall be held in trust for the payment of any balance due the said Heman Loomis until the same is fully paid."

This writing was signed by all the parties named in its caption, except Beach and the Toledo National Bank.

It should be here stated that before any sale took place several judgment creditors of the West Virginia Oil and Oil Land Company were allowed to intervene in the cause by petition, each asserting a right to have his demand paid out of the proceeds; some of them claiming priority over any creditor whose debt had been specifically provided for by the decree.

On the 1st of May, 1884, the property was offered by commissioners for sale at public auction, and Charles H. Shattuck became the purchaser at the price of $163,000, although he was at the time special receiver of the rents, profits and product arising therefrom. He was personally interested in his bid to the extent of about $20,000. Who his associates were is

not disclosed by the record. The sale was duly reported, the commissioners receiving from Shattuck on the day of sale the entire amount bid by him.

William P. Thompson and Oliver H. Payne, with William N. Chancellor as their surety, having executed a bond conditioned that if the property was resold they would bid the sum of $173,000, and having deposited the sum of $10,000, as additional security, the court directed a resale, and required the commissioners to return to the purchaser (which they did) the moneys theretofore received from him.

The next sale occurred on the 1st day of October, 1884, when Thompson and Payne, by Camden, acting as their agent, bid the sum of $173,000. But Camden bid, in his own name, the sum of $173,050, and, being the highest bidder, was declared the purchaser. In their report of sale the commissioners state:

" The said Camden did not, and has not as yet, paid to your commissioners the sum of money so bid and offered by him for said property as aforesaid, or any part thereof; but when your commissioners required the cash from said Camden, pursuant to the terms of said sale, he tendered to us a paper purporting to be a copy of a contract in writing made between several of the creditors mentioned in said decree of the 17th of November, 1883, authorizing the said Camden, as the agent or trustee of the said creditors who signed said contract, to purchase the said property at any sale thereof that might be made under said decree, and assigning to him the amounts decreed in favor of each of said several creditors, for the purpose of his using and applying the same in payment of the sums so bid by him for said property. Said copy of the contract, with the paper thereto attached, signed by Heman Loomis, by B. M. Ambler, his attorney, bearing date September 30, 1884, is herewith filed. Said Camden also exhibited to your commissioners the original of the said contract from which the copy hereto attached was made. Your commissioners declined to receive the said contract in payment, in whole or in part, of the purchase money so bid by said Camden for said property, or to accept anything in payment thereof except lawful and

current money of the United States, and this the said Camden has not as yet paid."

The "paper" here referred to was a letter from Loomis, in which he notified Camden that the latter would be held liable if he did not buy the property pursuant to the terms and conditions of the writing of November, 1883.

On the 6th of October, 1884, Camden filed his petition in said suit, in which he states that it was distinctly agreed by all whose names are mentioned in its caption, that he should, as their agent, purchase the property, and that each of them did, in person, or by their representatives, assent to that contract and its terms. He alleges: "Your petitioner now discovers that the paper was not actually signed by W. H. Beach or by said bank. He believes and charges that both are bound by said agreement, though they did not sign the same; but to avoid any vexatious litigation your petitioner is willing to pay, if required by the court, the full amount of the claims of said Beach and of said bank in cash. Your petitioner prays that, the premises being considered, he may be allowed to apply the claims and debts adjudged by said decree in discharge of his liability for the purchase money; that his compliance with the terms of said contract may be considered and decreed a compliance with the terms of said sale; that the said contract may be received in discharge of his bid; that the sale be confirmed, and that a deed be made to your petitioner for the said property, and that the court will make such further order or decree, and grant such other and general and further relief in the premises as your honors may deem right, as in equity may be proper."

Exceptions were filed by Carrington, Worth, Beach, the Toledo National Bank, Valentine and Blair to the report of sale; and, on their motion, a rule was awarded against Camden to show cause why he should not pay the sum of $173,050 bid by him for the property, or why the sale should not be set aside, and a resale had at his risk and cost. His petition above referred to was accepted as his answer to that rule. After answers filed by various creditors to Camden's petition, the court, upon application of Thompson and Payne, made an

order cancelling their bond, and ordering that the ten thousand dollars, deposited in the registry of the court, be returned to them, which was done. Subsequently a motion was made by several creditors to set aside that order as having been improperly procured and made, without notice to them.

The exceptions to the report of sale were sustained, the sale set aside, and the commissioners directed to resell the property at the cost of Camden for cash in accordance with the original decree; and "if the said property shall be sold for a less sum than one hundred and seventy-three thousand and fifty dollars, the said bid of the said Camden, the court reserves for future determination in this cause the question whether the said Camden will be required to pay the deficiency."

The third sale occurred March 17, 1885, and the property then brought only $119,100, Shattuck becoming the purchaser, and paying that amount in cash to the commissioners. To this sale certain creditors filed exceptions on the ground, among others, that the amount bid was grossly inadequate. In addition some of them filed petitions which Camden answered, whereby an issue was made as to the confirmation of the last sale, and as to his liability for the deficiency. Upon these matters the parties took proof. The cause was heard before Chief Justice Waite, when a final order was made June 6, 1885, reciting, among other things, that the court was of opinion that, if the last sale was confirmed, Camden, by virtue of his bid, was liable to pay the difference between the sum of one hundred and seventy-three thousand and fifty dollars and the amount, one hundred and nineteen thousand and one hundred dollars, bid by Shattuck, and all costs rendered necessary by his failure to comply with the terms of sale, and that the last sale to Shattuck should be confirmed, unless either Camden or Thompson and Payne would take the property at the amounts of their respective bids.

The record shows that after announcing this opinion the court offered Camden, who was then present, with his counsel, the privilege of taking the property at the sum bid by him, and of having his purchase confirmed, if he would pay in cash the amount bid by him. This offer was refused, Camden

declaring in open court that he would not take the property unless the sale was confirmed on the basis of the alleged contract of November, 1883, between him and others. The court then called on him, as the agent of Thompson and Payne, to elect for them whether they would take the property at the sum he had bid for them, and pay the cash therefor; and he thereupon declared that, while he had authority to make the bid originally, he had not authority to make an election for them under the offer now made. An order was, thereupon, May 15, 1885, entered, vacating the order of the 3d day of November, 1884, cancelling the bond of Thompson, Payne, and Chancellor, confirming the last sale to Shattuck, and directing the commissioners, by proper deed, to convey the property to him.

It was further decreed that Camden pay into the registry of the court, for the benefit of such of the parties to the suit or other persons as might be entitled thereto, the sum of fifty-three thousand nine hundred and fifty (53,950) dollars, with interest, and the costs rendered necessary by his failure to comply with the terms of his bid in cash. *Mayhew* v. *West Virginia Oil and Oil Land Co.*, 24 Fed. Rep. 205. This is the decree which is here for review upon Camden's appeal.

*Mr. Attorney General* (with whom was *Mr. J. B. Jackson* on the brief) for appellant.

I. There can be no liability upon Camden for any deficiency upon a resale of the property, because his bid for the property at the sale made October 1, 1884, was only an offer to take the property at the price bid, should the court receive his bid, and *confirm the sale*. *Kable* v. *Mitchell*, 9 West Virginia, 517. It is true, a rule was issued against Camden to show cause why he should not pay the amount of his bid, and further, to show cause why the sale should not be set aside. But it fully appears by the Record that, upon the hearing of the rule, no order or decree was entered accepting his bid. On the contrary, it does appear that the sale so made to him was set aside, and as a consequence thereof his bid was rejected.

· II. It is further submitted that it was error in the court to issue the rule until the court had first confirmed the sale.  In *Anonymous*, 2 Ves. Jr. 335, decided· 17th June, 1794, Mr. Richards moved that a person. reported best purchaser should complete his purchase and pay in his money on or before the 5th of July.  The report had been confirmed *nisi*, and the motion was occasioned by a doubt as to the practice whether a purchaser can be quickened before the report is confirmed absolutely.  The Lord Chancellor said he felt a, difficulty, because, till confirmation, the purchaser is always liable to have the biddings opened; till that, *non-constat*, that he is the purchaser.  ·In the case under consideration the court did that which the Lord Chancellor in. the case cited said could not be done.  It was an endeavor to quicken the purchaser; to compel him to pay his money into court before confirmation. This, we submit, was · error.  Confirmation is the judicial sanction of. the court.  Until it takes place the bargain is incomplete, and the sale confers no right.  *Busey* v. *Hardin*, 2·B. Mon. 407; *Blair* v. *Core*, 20 West Virginia, 265; *Core* v. *Strickler*, 24 West Virginia, 696; *Richardson* v. *Jones*, 3 G. & J. 163; *S. C.* 22 Am. Dec.· 393.

The rule that the Master's report of a purchase must be confirmed before the contract can be considered as binding applies·equally to·cases in which it is sought to compel a purchaser to complete his purchase, as where it is ·sought to enforce the contract against the vendor. · As a preliminary step, therefore, towards enforcing the completion of the contract, it is necessary to have the report confirmed.  2 Daniell Ch. ·Pr.. (5th Am. Ed.) *1281; *Cooper* v. *Hepburn et al.*, 15 Grattan, 566.

· ¸ The bidder, not being. considered the purchaser until the report is confirmed, is not liable to any loss by fire or otherwise, which may happen to the estate in ·the interim; nor· is he, until the confirmation of the report, compellable to complete his purchase.  1 Sugden Vendors & Purchasers, bottom pp. 70–71 (7th Am. Ed.); *Ex parte Minor*, 11 Ves. 559; *Twigg* v. *Fifield*, 13 Ves. 577.

The .bid made by the·purchaser at the sale must be con-

sidered as his offer to the court through its commissioners, and in making it he agrees to be bound thereby if it is accepted and approved by the court; it is discretionary with the court whether it will accept the bid and confirm the sale, or set it aside. *Marling* v. *Robrecht*, 13 West Va. 440, 474; *Long* v. *Willer*, 29 Grattan, 347, 355.

In this proceeding Camden occupies an anomalous and trying position. He is required to pay nearly fifty-four thousand dollars and gets nothing to show for it. He has no title to the property, and has no option to take it, as the title is in another, and yet he must pay this large sum. This is not regular by any means, but it quite reverses the well-recognized rule in orderly and consistent judicial proceedings. It is directly at war with the doctrine as laid down in the somewhat noted case of *Williamson* v. *Berry*, 8 How. 495, 545–546, and it ignores the views expressed in *Blossom* v. *Railroad Co.*, 3 Wall. 196, 207.

This court, in *Stuart* v. *Gay*, 127 U. S. 518, 527, gives full sanction to the proposition here contended for in citing with approbation authorities sustaining this position. See, also, *Campbell* v. *Gardner*, 3 Stock. (11 N. J. Eq.) 423–425; *S. C.* 69 Am. Dec. 598; *Conover* v. *Walling*, 2 McCarter (15 N. J. Eq.) 173. The case from 3 Stockton, with citations, would seem conclusive on the point.

After the report of sale by a Master *is confirmed* there are, according to the English practice, three means of remedying the failure of the purchaser to comply with the terms of sale. 1st. If it appears that the purchase has been made by a person unable to perform his contract, the parties interested in the sale may, upon motion, obtain an order simply discharging him from his purchase, and directing the estate to be resold. 2d. If the purchaser is responsible the court will, if required, make an order that he shall within a given time pay the money into court, and if the purchaser, on being served with the order, fails to obey it, his submission to it may be enforced by attachment. 3d. Or an order will be made for the estate to be resold, and for the purchaser to pay the expenses arising from the non-completion of the purchase and

resale, and any deficiency in price arising under the second sale. *Lansdown* v. *Elderton*, 14 Ves. 512; *Harding* v. *Harding*, 4 Myln. & Cr. 514; *Anderson* v. *Foulke*, 2 Har. & Gill, 346; *Brasher* v. *Cortlandt*, 2 Johns. Ch. 505; 2 Daniell Ch. Pr. *ubi supra; Clarkson* v. *Read*, 15 Grattan, 288, 291; *Hill* v. *Hill*, 58 Illinois, 239.

III. The decree directing the sale gave no day to the purchaser to redeem. It is the invariable rule to give such day in suits by mortgagee against mortgagor to foreclose mortgage. *Long* v. *Weller*, 29 Grattan; *Clark* v. *Reyburn*, 8 Wall. pp. 318, 322–324. The same rule applies in judicial sales. The contract is treated substantially as a contract between the purchaser, on one side, and the court, as vendor, on the other.

For these reasons, the decree appealed from should be reversed.

*Mr. C. C. Cole* and *Mr. George Wadsworth* for appellee. *Mr. W. L. Cole* was with them on the brief.

MR. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

It is undoubtedly true that Camden's bid of one hundred and seventy-three thousand and fifty dollars was, in legal effect, only an offer to take property at that price; and that the acceptance or rejection of that offer was within the sound equitable discretion of the court, to be exercised with due regard to the special circumstances of the case and to the stability of judicial sales. *Milwaukee Railroad Co.* v. *Soutter*, 5 Wall. 662; *Williamson* v. *Dale*, 3 Johns. Ch. 290, 292; *Kable* v. *Mitchell*, 9 West Va. 492, 509; *Core* v. *Strickler*, 24 West Va. 689, 696; *Busey* v. *Hardin*, 2 B. Mon. 407, 411; *Hay's Appeal*, 51 Penn. St. 58, 61; *Childress* v. *Hurt*, 2 Swan, 487, 489; *Duncan* v. *Dodd*, 2 Paige, 99, 100, 101. It is further contended that an acceptance of that offer could only have been manifested by an order confirming the sale; and as no such order was in fact made, that Camden could not be held

liable for a deficiency arising upon a resale of the property. In support of this position his counsel cite 2 Daniell's Chancery Practice and Pleading, *1281, Cooper's 5th Am. ed., in which it is said : " The rule that the Master's report of a purchase must be absolutely confirmed before the contract can be considered as binding, applies equally to cases in which it is sought to compel a purchaser to complete his purchase, as where it is sought to enforce the contract against the vendor. As a preliminary step, therefore, towards enforcing the completion of the contract, it is necessary to have the report confirmed." The present case, however, is not one in which it is sought to compel the purchaser to complete his purchase. It may be that if the court below had determined to hold Camden to his bid for the property, a necessary preliminary step to that end would have been the formal confirmation of the sale, and, perhaps, the tender of a deed, to be followed by an order compelling him to pay the whole amount that he offered. But it was not restricted to that particular mode of securing the rights of the parties for whose benefit the property was sold ; for, upon appellant refusing to pay the amount bid, the court, without confirming the sale by a formal order, could have held him to his offer, and ordered a resale in the meantime at his risk, both in respect to the expenses of the resale and any deficiency resulting therefrom. The latter course was approved by Lord Cottenham in *Harding* v. *Harding*, 4 Myln. & Cr. 514, and was in accordance with previous decisions. *Saunders* v. *Gray*, 4 Myln. & Cr. 515 ; *S. C.*, *Gray* v. *Gray*, 1 Beavan, 199 ; *Tanner* v. *Radford*, 4 Myln. & Cr. 519. So in Daniell's Chancery Pr. & Pl. (vol. 2, *1282) : "According, however, to the present practice, a more complete remedy is afforded against the purchaser refusing, without cause, to fulfil his contract ; for the plaintiff may obtain an order for the estate to be resold, and for the purchaser to pay as well the expenses arising from the non-completion of the purchase, the application, and the resale, as also any deficiency in price arising upon the second sale."

In view of the terms of the decree of November 17, 1883, there is no ground for the contention that the confirmation of

the sale to Camden was necessary in order to fix liability on him for the deficiency arising upon the resale. The decree expressly required that the sale should be made " upon the terms .cash in hand on the day of sale; " thus practically making the payment in cash on the day of sale of the sum bid a condition precedent to the right of the purchaser to demand a confirmation of the sale. The commissioners appointed had no authority to accept from the purchaser anything but cash, nor could they postpone payment of the sum offered beyond the day of sale. They conformed in all respects to the terms of the decree, and Camden bid in his own name, without any previous notice to them that he represented others in so bidding, or that he desired or intended to use the debts of particular creditors in making payment in whole or in part. His application to the court, after the report of sale, that he be permitted to complete his purchase by using the alleged "contract" of November, 1883, was properly denied, for several reasons: *First*, the writing of that date could not become a contract binding upon those signing it until it was executed by all whose names appear in its caption; *Second*, after the original decree was passed, and before the first sale took place, judgment creditors, for whom the decree made no provision, intervened in the cause, claiming a lien upon the proceeds of any sale that might be made, some of them asserting priority even over the creditors named in the decree; *Third*, the court was not bound, in deference merely to the wishes of a part of the creditors, to depart from the terms of sale, especially as the creditors whose names appear in the alleged contract of November, 1883, did not, prior to the sale, ask such modification of those terms as would enable them to use their claims in purchasing and paying for the property.

But if there was any ground to insist that a confirmation of the sale was necessary before Camden could be made liable for the deficiency resulting from the resale, all difficulty upon that point was removed by the distinct offer made in open court, to confirm the sale to him, upon his complying with the terms thereof, by paying, in cash, the amount of his bid. This offer having been refused, and the court having been thereby in-

formed that he did not wish to complete the purchase according to the terms of the decree and of his bid, there was no necessity to go through the form of confirming the sale to him, and then, immediately, ordering a resale, at his risk and cost; but, as we have seen, the court was at liberty, without such formal confirmation, to order a resale, holding him responsible for any deficiency resulting therefrom.

The only question that remains to be considered is whether the liability of Camden for the deficiency in the price of the property on the last sale ought to have been ascertained and enforced by an original, independent suit. We are of opinion that the mode adopted in the present case was entirely regular.

Where a purchaser refuses, without cause, to make his bid good, he may be compelled to do so by rule or attachment issuing out of the court under whose decree the sale is had. It was so held in *Blossom* v. *Railroad Co.*, 1 Wall. 655, 656, where it was said that a purchaser or bidder at a Master's sale in chancery subjects himself *quoad hoc* to the jurisdiction of the court, and can be compelled to perform his agreement specifically. In *Lansdown* v. *Elderton*, 14 Ves. 512, a motion that the person reported to be the best bidder before the Master pay within a given time the purchase money or stand committed, was sustained by Lord Chancellor Eldon, who observed that the purchaser could not be permitted to disobey an order, more than any other person. That case was followed in *Brasher* v. *Van Cortlandt*, 2 Johns. Ch. 505, 506, where Chancellor Kent, after observing that the purchaser ought to be compelled to complete the purchase, said: "If no order of this kind could be made, in this case, it would follow that not only the purchaser, but the committee of the lunatic, would be permitted to baffle the court, and sport with its decree. . . . I have no doubt the court may, in its discretion, do it in every case where the previous conditions of the sale have not given the purchaser an alternative." See also *Blossom* v. *Railroad Co.*, 3 Wall. 196, 207; *Smith* v. *Arnold*, 5 Mason, 414, 420; *Requa* v. *Rea*, 2 Paige, 339, 341; *Cassamajor* v. *Strode*, 1 Sim. & St. 381; *Anderson* v. *Foulke*, 2 Har. & Gill, 346, 362, 373. If, as is

clear, the purchaser can be required, by rule or attachment, to pay into court the entire sum bid by him and thus complete his purchase, it is difficult to see why a bidder, sought to be made liable for a deficiency resulting from a resale caused by his refusal to make his bid good, may not be proceeded against in the same suit by rule, or in any other mode devised by the court that will enable him to meet the issue as to his liability. That issue in the present case was tried upon pleadings and proof, and there is no pretence that the appellant had not full opportunity to present his defence before the final order now under review was made.

It is suggested by the learned counsel for the appellant that his client occupies an anomalous position, being required to pay a very large sum, without getting anything in return therefor. It is only necessary to say that, even if the late Chief Justice was mistaken in supposing that the appellant was directly or indirectly interested in the last purchase by Shattuck, his failure to obtain a conveyance of the property was due entirely to his persistent refusal to comply with the terms of his own bid, made with full knowledge of the terms of sale.

*Decree affirmed.*