The FIRST NATIONAL BANK OF WASHINGTON, Plaintiff,

v.

BREEZY POINT CAMP, INC., etc., et al., Defendants.

United States District Court
S. D. New York.

Jan. 11, 1966.

Satterlee, Warfield & Stephens, New York City, for plaintiff; Francis D. Kalosky, Henry J. Formon, Jr., New York City, of counsel.

RYAN, Chief Judge.

Plaintiff has moved, upon due notice, for an order assessing damages against the bidder and purchaser at the first foreclosure sale herein, J & N Holding Corporation, and its assignee, LCC Holding Corporation, and any and all parties claiming by or through them or either of them, and holding them liable for all costs, losses and damages incurred by plaintiff arising out of the default of said purchaser and its assignee and the consequent necessary resale of said mortgaged premises and directing that all funds heretofore received by or deposited with the Special Master appointed herein by or on behalf of said J & N Holding Corporation or its assignee, be forfeited and applied in payment of said costs, losses and damages incurred by plaintiff, all without prejudice to plaintiff's right to recover from said J & N Holding Corporation or its assignee any difference between said amount forfeited and such costs, losses and damages and all without prejudice to plaintiff's further right to recover any deficiency under the mortgage and agreements sued upon herein from any and all parties who may be liable therefor and for such other and further relief as to the Court may seem just and proper.

We have concluded that the relief sought should be granted as hereinafter set forth and an order so providing may be submitted without notice of settlement, since no one has appeared in opposition.

William H. Jackson, Esq., who, on January 7th, 1965, was first appointed in this action by the Court as a Referee to ascertain, compute and report as to the amount due plaintiff on the mortgage in suit, has filed full affidavits of his services since rendered, and now asks that his compensation be fixed for all services rendered as Special Master to sell and convey on the judgment of foreclosure entered herein. We find just, fair and reasonable compensation for these services so rendered to be $3,500.00 in addition to the $300.00 heretofore allowed and it is fixed in that amount; an order so providing may be submitted.

We find from examination of the records and files in this action the following undisputed facts.

This action was filed on June 10, 1964, by The First National Bank of Washington (the "Bank") in the Supreme Court of the State of New York for the County of Sullivan, to foreclose a mortgage on approximately 159 acres of land with buildings thereon situate at Thompson, Sullivan County, New York comprising a part of the premises of a summer camp consisting of about 216 acres. The defendants included, among others, the record owner of the property, Breezy Point Camp, Inc. (name changed to Rock Hill Lodge & Resort Corporation), Joan L. and Frank J. Crisona and Florence and Joseph Harris, the individual obligors. On July 30, 1964 the Supreme Court authorized the filing of an amended complaint, to bring in additional parties defendant, which was thereafter duly served on all defendants.

On August 25, 1964, the action was removed to this Court on petition of the United States of America, a party to the action by reason of the existence of certain federal tax liens against the mortgaged premises. By order dated October 21, 1964, this Court authorized the service of a second amended complaint, to bring in further additional parties defendant, which was thereafter duly served on all parties. One defendant answered and then withdrew its answer. All other defendants either defaulted in pleading or appeared and waived service of all papers in the action except certain specific papers not here material. From

the outset and throughout all proceedings had herein the mortgagor and the individual obligors defaulted.

By order entered herein on January 7, 1965, William H. Jackson, Esq., was appointed Referee to compute and take plaintiff's proofs. Upon due notice, he held hearings and filed his report which was confirmed on March 10, 1965, and on that date a judgment of foreclosure and sale was entered by the Court, which judgment awarded plaintiff the sum of $437,406.44 with interest on $436,895.00 thereof at a rate of 6% per annum from January 18, 1965, and on $611.44 at 6% per annum from March 10, 1965. A fee of $300.00 was awarded to him, for his services as Referee and he was thereafter also designated the Special Master to sell the mortgaged premises at public sale.

Thereafter, the mortgaged premises were duly advertised for sale and proofs of publication were duly filed in this Court. In pursuance of the judgment of foreclosure the Master attended the advertised sale on April 21, 1965, and there read aloud the Terms of Sale to all persons assembled at the scheduled place of sale, i. e., the Sullivan County Court House, Monticello, New York. The Terms of Sale provided, among other things:

> "2nd. The residue of said purchase money will be required to be paid in cash or certified check to the said Master at his office, 107 William Street, New York City, in the County of New York, New York on the 1st day of May, 1965, at 2:30 P.M., when the said Master's deed will be ready for delivery.

> "6th. The biddings will be kept open after the property is struck down; and in case any purchaser shall fail to comply with any of the above conditions of sale, the premises so struck down to him will be again put up for sale under the direction of said Master under these same terms of sale, without application to the Court, unless the plaintiff's attorneys shall elect to make

such application; *and such purchaser will be held liable for any deficiency there may be between the sum for which said premises shall be struck down upon the sale, and that for which they may be purchased on the resale, and also for any costs or expenses occurring on such resale."* (Emphasis supplied.) (Report of Special Master (RSM) filed herein June 29, 1965, Par. 3 and Ex. thereto.)

There were no bidders except one John M. Neiman ("Neiman") and the plaintiff. The Master struck off the premises to Neiman, who stated that he was bidding on behalf of J & N Holding Corporation ("J & N"), for $350,000, that being the highest sum bid. (Subsequently, Neiman identified himself as an officer of J & N, i. e., its Secretary. See Ex. to RSM, Min. May 28, 1965, p. 6.) Thereafter a Memorandum of Sale, which recited that the purchaser agreed to comply with the terms and conditions of sale, was executed by Neiman on behalf of J & N, and the Master, who received from the former $35,000, namely 10% of the bid, as part payment of the purchase price. (Exhibit to RSM) That sum was thereafter deposited in the special account opened, pursuant to the judgment of foreclosure, in the Sterling National Bank and Trust Company of New York (RSM Par. 3).

It further appeared that because the closing of title specified in the Terms of Sale (Ex. to RSM) was Saturday afternoon, May 1, 1965, a stipulation changing it from May 1 to May 3, 1965, was executed by the Master, and Neiman, acting for J & N, and defendant Frank J. Crisona, who then identified himself as attorney for the purchaser, and was consented to by the plaintiff's attorneys (Ex. RSM). On May 3, 1965, there was delivered to the Master an Assignment executed on behalf of J & N, in which it was stated that J & N assigned to "L. C. C. Holding Corporation, a New York corporation" ("LCC") all its right, title and interest in and to a certain Memorandum of Sale dated April 21, 1965

between Neiman, acting for J & N as purchaser, and William H. Jackson, as Master (Ex. to RSM). On that same day Neiman requested an adjournment of the closing although the Special Master was prepared to tender a deed. A stipulation was then executed by the Master and Neiman who signed on behalf of the "Assignee of the Purchaser" adjourning the closing to May 7, 1965 (Ex. to RSM). Said stipulation further recited:

"In consideration of the aforesaid adjournment, the undersigned assignee has paid to the Special Master, on account of the purchase price the additional sum of $5,000, the receipt whereof by check is hereby acknowledged subject to collection."

On May 7, 1965, a further adjournment was requested on behalf of the assignee of the purchaser as a result of which a stipulation was entered into adjourning the closing of title until May 17, 1965 (Ex. to RSM). That stipulation stated:

"In consideration of the aforesaid adjournment the undersigned, Frank J. Crisona on behalf of the assignee has paid to the Special Master, on account of the purchase price an additional sum of $25,000 by bank check, Royal National Bank, New York, New York, the receipt whereof is hereby acknowledged subject to collection."

Defendant Frank J. Crisona is identified in said stipulation as attorney for Neiman and the assignee of the purchaser. (Ex. to RSM) Again, on May 17, 1965, and on May 24, 1965, upon the request of the assignee of the purchaser, stipulations were executed adjourning the closing date, first, from May 17, 1965 to May 24, 1965, and then from that date to May 26, 1965 (Exs. to RSM). In each instance, there was delivered to the Master on behalf of the assignee of the purchaser a check for $10,000 drawn by Neiman (RSM Pars. 7, 8 and Exs. thereto). One of those checks, the first dated May 17, 1965, was subsequently dishonored after deposit for inadequate

funds, and the second, dated May 24, 1965, was not deposited by the Master because it contained as an endorsement an incorrect statement of account. Both checks had been delivered upon account of the purchase price (RSM Par. 10).

In the May 17, 1965 stipulation it was also provided:

"As a condition to obtaining the consent of the plaintiff to this adjournment the undersigned hereby stipulates as follows: (1) To adjust taxes as of May 3, 1965; (2) to pay plaintiff's insurance premium on said premises applicable to the period May 3, 1965 to date of closing; (3) to pay interest on the sum of $350,000 at the rate of 6% per annum from May 3, 1965 through the day of the closing; and (4) to pay on the closing in addition to the purchase price the sum of $1,000 as and for compensation to plaintiff for extra expenses and costs involved in the adjournments heretofore obtained.

"The undersigned does further stipulate that in the event that he is unable to close title on the adjourned date he will not contest any application by plaintiff to enter a default and to resell the property, the undersigned Purchaser hereby waiving any and all rights in the sums heretofore paid in connection with this sale."

This stipulation was signed by John M. Neiman, "individually and on behalf of L.C.C. Holding Corporation". (RSM Ex.)

The foregoing waiver provisions were specifically incorporated into the later stipulation of May 24, 1965 (RSM Ex.). The checks for $30,000 received on May 3 and May 7, 1965, as recited above, were added to the deposit of $35,000 received at the auction sale in the Master's account with the Sterling National Bank & Trust Company (RSM last par.).

On May 26, 1965, the day to which the closing of title had been adjourned

pursuant to the stipulation of May 24, 1965, the closing was further adjourned upon the request of the assignee of the purchaser, to May 28, 1965, pursuant to a stipulation recorded in the stenographic transcript of the closing proceedings. (A transcript of the proceedings entitled "Continuation of Closing May 26, 1965" is also an exhibit to the "Master's Report of Proceedings With Respect to Sale" referred to above.) As reflected in those minutes, in addition to the presence of the Master and counsel for the plaintiff Bank at the time and place of closing, there were present counsel for the title company, counsel for two purported mortgage lenders (produced by the purchaser or its assignee) defendant Frank J. Crisona, as counsel for LCC (the assignee of the purchaser) and Louis Reiter who was identified as the broker for LCC. A formal tender of the Master's deed to the premises specified in the Notice of Sale with revenue stamps attached was made to defendant Frank J. Crisona, as attorney for LCC, and to the representative of the purported mortgagee for the purchaser (Min. pp. 4 and 8). Checks of the Master in payment of real estate taxes as required by the Terms of Sale were also tendered (RSM par. 11; RSM Ex.). In these proceedings the waiver provisions of the stipulations of May 17 and 24, 1965, quoted above, were reaffirmed (Min. pp. 11 and 12) and a fee of $1,000 for the extra work of plaintiff's counsel to that date was increased by $500 in the new stipulation, which amount the purchaser or assignee agreed to pay (Min. p. 12).

Again, on May 28, 1965, another attempt was made to close title and again the assignee was not prepared to close and sought an adjournment. As in the immediately preceding instance, the Master caused a stenographic transcript to be made, which transcript is entitled "Continuation of Closing May 28, 1965" and is an exhibit to the "Master's Report of Proceedings With Respect to Sale" referred to above. The persons present at that time, in addition to the Master

and counsel for the Bank, were identified as:

Louis Reiter, broker for LCC;

Joan Crisona (wife of defendant Frank J. Crisona, the attorney for LCC, and also a defendant in the mortgage procedure action) who was identified as the sole stockholder of LCC (Min. p. 3);

Neiman (who acted for the original purchaser at the public sale on April 21, 1965, and who also appeared on various closing dates as representing LCC) who then identified himself as a principal, and secretary of, J & N, the original purchaser (Min. p. 6).

The Master's deed to the premises offered at the sale on April 21, 1965, again was tendered to LCC and to Neiman (Min. p. 6). Again, they were unprepared to close. It was at this attempt to close title that Mr. Reiter, the broker for LCC stated:

"I will make this statement again—the plaintiff in this action has at this time solid citizens in the Royal National Bank and its corresponding bank for the purposes of closing this deal. Other than the legal expense that is going to be borne by the so-called purchaser and going through the United States District Court for an order to show cause—putting the Master to additional trouble and the attorneys for the plaintiff and the bank in Washington, I would suggest at this time that in view of the fact of the substantial deposit of $65,000, that this adjournment shall be granted, and it will serve its purpose and so that we will do this in good faith and we shall say this—*we will stipulate that one week after the 15th of June if we don't go through with it you may then declare us in default and we will release you of your deposit without any claims.*" (Emphasis supplied.) (Min. p. 9.)

Defendant, Joan L. Crisona, sole stockholder of LCC, several times during the

course of the proceedings consented to all the statements made by Reiter and affirmed his authority to speak for her and LCC (Min. pp. 3, 4, 5, 8),

The "Master's Report of Proceedings With Respect to Sale" referred to above, was filed in this Court on June 29, 1965, and notice of filing was given to attorneys for all parties appearing in the mortgage foreclosure proceedings, as well as to the purchaser, its assignee, Neiman and Frank J. Crisona, as attorney for them.

Upon plaintiff's motion, brought on by order to show cause dated July 9, 1965, served on all parties to the mortgage foreclosure proceedings and the aforesaid purchaser, assignee, Neiman and Frank J. Crisona as their attorney, on the return day of which no one appeared in opposition thereto, this Court entered an order dated August 9, 1965, which ordered and declared:

"(1) J & N Holding Corporation, the original bidder and purchaser at the foreclosure sale held herein on April 21, 1965, to be in default in proceeding to complete the purchase of the mortgaged premises described in the complaints herein,

(2) LCC Holding Corporation, the assignee of said J & N Holding Corporation, bidder and purchaser at said foreclosure sale herein, to be in default in proceeding to complete the purchase of said mortgaged premises,

(3) any and all parties claiming any right of assignment under the bid and purchase of J & N Holding Corporation, the bidder and purchaser at said foreclosure sale herein to be in default in proceeding to complete the purchase of said mortgaged premises,

(4) William H.. Jackson, Special Master herein, to hold any and all funds received by him as a deposit or otherwise from or on behalf of the aforesaid bidder and purchaser, J & N Holding Corporation or its assignee,

(5) that said mortgaged premises be reoffered for sale and resold at public auction by and under the direction of said William H. Jackson, Special Master,

(6) that upon the completion of the resale and conveyance of said mortgaged premises plaintiff apply herein to recover of the purchaser, J & N Holding Corporation, and its assignee, LCC Holding Corporation, and any and all parties claiming by or through them or either of them, all costs, losses and damages incurred by plaintiff arising out of said defaults and to have the funds heretofore received by or deposited with said Special Master from or on behalf of the aforesaid bidder and purchaser, J & N Holding Corporation, or its assignee as aforesaid, applied in payment of said costs, losses and damages."

The mortgaged premises were thereafter advertised for resale as required by law and notice of sale was given to all parties to the mortgage foreclosure proceedings entitled to such notice, as well as the purchaser, its assignee, Neiman, and Frank J. Crisona, their attorney (RSM Exs. B, C, D, E and F).

On September 17, 1965, the date fixed in the Notice of Sale for the resale, the Special Master attended at the Sullivan County Courthouse steps, Monticello, New York, and there read aloud the Terms of Sale to all assembled (RSM Ex. G; RSM p. 3; see also Stenographic Transcript of Sale Proceedings which is Exhibit H thereto, pp. 2–3). The Special Master solicited bids from all assembled (RSM p. 4). Finally, after individually canvassing several of the persons present and not receiving any bid (RSM p. 6), the Master adjourned the proceedings for fifteen minutes to give prospective bidders further opportunity to put in bids. No bids were made (RSM p. 6). Thereafter the Special Master struck off the property to the plaintiff Bank in response to its bid of $285,000, there being no other bids received in response to the solicitation of the Special Master (RSM p. 7). Thereafter a Memorandum of Sale was executed between the Master and the Bank, and on September 27, 1965, the deed executed by the Special

Master in order to convey the mortgaged premises to the Bank, was delivered to the Bank. The Report of the Referee on the Resale, referred to above, and the sale to plaintiff, were duly confirmed by this Court on December 6, 1965, upon notice to all interested parties.

It specifically appears of record that all orders, motions, reports and other papers filed herein commencing with the Special Master's Report of Procedures With Respect to Sale dated June 28, 1965, referred to above, which were served upon the parties to the foreclosure action (including service upon Frank J. Crisona, Esq., as attorney for defendants Breezy Point Camp, Inc., Frank J. Crisona, Joan L. Crisona, Joseph Harris and Florence Harris) were also served upon J & N, LCC, Neiman and Frank J. Crisona, Esq. as their attorney and in each and every instance they defaulted.

The affidavits of Francis D. Kalosky, sworn to October 20, 1965 and December 7, 1965, submitted in support of this application establish liquidated damages to plaintiff in the aggregate amount of at least $11,075.52 for the following losses, expenses and costs incurred and expended as a consequence of the default by the purchaser and assignee in closing:

(a) $7,020.14 representing the unpaid 1963, 1964 and 1965 County of Sullivan and Town of Thompson taxes, which were liens on the mortgaged premises, with penalty and interest to date of resale, for which the purchaser was responsible under the terms of sale;

(b) $1,090.23 representing 1965–1966 School taxes assessed against said mortgaged premises between the date of sale and date of resale which were liens on the date of resale;

(c) $336.00 representing the sum paid for the services of a watchman between the date of sale and date of resale to preserve the mortgaged premises from damage;

(d) $159.20 representing maintenance charges for the mortgaged premises between the date of sale and date of resale;

(e) $75.00 representing charges for necessary title searches in connection with resale of mortgaged premises and attendance at resale by representative of title company;

(f) $2,232.71 representing short rate charge for insurance, fire and extended coverage between date of sale and date of resale;

(g) $162.24 representing the cost of advertising the mortgaged premises for resale.

It is also found that the following liquidated losses and expenses totaling an additional sum of $14,542.47 incurred but not yet paid are also a direct consequence of the default by the purchaser and assignee in closing of title on the bid made at the first judicial sale of the property in suit, to wit:

1. Interest in the sum of $12,542.47 representing interest accruing between the date May 3, 1965 and the date of this Motion (December 7, 1965) on $350,-000 in accordance with the stipulation of May 17 (supra, p. 6).

2. A sum of $2,000.00, which amount I hereby find as that portion of the Special Master's fee fixed herein which is attributable to the default in closing which resulted in necessary services by the Special Master subsequent to the first sale, including attendance at the numerous adjourned closings on the first sale, and in connection with the motion for default and preparations for and attendance at the resale of the mortgaged premises, and the conveyance in connection therewith.

The total of these two groupings of losses incurred by the plaintiff by reason of the default by the purchaser and assignee in closing is $25,617.99.

We accept the appraisal of Alvin Benton of the property in suit as fair and reasonable; the plaintiff's bid of $285,-000.00 made and accepted on the second sale is $10,000.00 more than the highest value set by this appraisal. The damage sustained by the plaintiff by reason of the default in closing is clearly established on the resale bid as at least in the

sum of $65,000.00, added to the other liquidated damages above listed of $25,-617.99, makes a total of $90,617.99, a sum in excess of the funds held by the Special Master, which amount to $64,362.02. The Special Master will accordingly be directed to turn over to plaintiff said amount of $64,362.02 as a credit against the foregoing damages suffered by it.

We are also informed by plaintiff's attorneys that additional expense was incurred of $12,015.51 attorneys' fees and disbursements and plaintiff's expense of $352.27. These expenses are not considered herein and with respect to the collection of them, as well as other expenses and damages sustained by plaintiff, not reimbursed out of the funds in the possession of the Special Master, the plaintiff may pursue any remedy available to it.

Authority for the foregoing exercise of jurisdiction by this Court and for the relief granted herein may be found in the following cases, among others: Camden v. Mayhew, 129 U.S. 73, 9 S.Ct. 246, 32 L.Ed. 608 (1888); Feldman v. American Palestine Lines, Inc., 18 F.2d 749 (2d Cir. 1927); Plimpton v. Mattakeunk Cabin Colony (D.C.Conn.1934) 9 F.Supp. 288; Archer v. Archer, 155 N.Y. 415, 50 N.E. 55 (1898).