# FIRST NATIONAL BANK OF SOUTHEASTERN OHIO

v.

## GAYDAC et al.

Court of Common Pleas of Ohio,
Washington County.

No. 92FR323.

Decided Dec. 23, 1994.

*McCauley, Emrick & Webster* and *Thomas P. Webster,* for plaintiff.

*Musser, Long & Harris* and *Philip S. Musser,* for defendant James Harmon.

*Timothy J. Gaydac, pro se.*

*Michael G. Spahr,* Washington County Prosecuting Attorney, for Dorothy Peppel, Washington County Treasurer.

---

ED LANE, Judge.

This matter came on to the court for a non-oral hearing on the motion of the plaintiff for summary judgment. Originally this court established a non-oral hearing on the plaintiff's motion for October 31, 1994. Thereafter on the motion of the plaintiff, this non-oral hearing was continued to November 21, 1994 to allow the plaintiff time to file an additional memorandum. This matter was continued a second time to December 12, 1994 for a non-oral hearing on the motion of the defendant, James Harmon, to allow Harmon time to file an additional memorandum. Neither of the parties filed additional memorandums. The plaintiff, the First National Bank of Southeastern Ohio, filed its motion for summary judgment pursuant to Civ.R. 56 in the above-styled action on September 23, 1994.

Civ.R. 56(C) provides in pertinent part that:

"[If] there is no genuine issue as to any material fact and [if] the moving party is entitled to judgment as a matter of law [, summary judgment shall be rendered]."

This action was originally filed as a foreclosure action by the plaintiff against the defendants, Timothy J. Gaydac and Carol L. Gaydac, and other defendants who had liens or other interests in this property. This court entered a judgment and order of sale on July 28, 1993. Thereafter, the property was appraised and advertised by the Sheriff of Washington County for sale in accordance with law. A sale was completed by the Washington County Sheriff's Office on September 17, 1993. The successful bidder at the sale was the defendant, James Harmon. Harmon bid $65,000 for the subject property. At the time of the original sale, the appraised value, as determined by appraisers appointed by the sheriff, was $45,000. Therefore, the bid price of $65,000 was more than two thirds of the appraised value required by Ohio Law. Thereafter, the defendant, James Harmon, defaulted upon payment to the sheriff of the bid amount of $65,000.

On January 3, 1994, following the failure of this defendant to pay the bid price, the plaintiff filed a motion to join James Harmon as an additional party and an additional defendant to this action. This court granted an order making the defendant James Harmon a party to these proceedings. This order was entered

by this court on February 23, 1994. At the time of making its motion to join James Harmon as a defendant party to this action, the plaintiff also filed a motion for an order to re-sell the subject real estate. On January 6, 1994, an order to re-sell was entered by this court. In accordance with law, the property that is the subject of this action was re-appraised by the sheriff and again offered for public auction on May 13, 1994. On May 13, 1994, the property was again sold at sheriff's sale for a price of $24,000. The price of $24,000 was two thirds of the second appraised value of $36,000. This sale was subsequently confirmed by this court by an entry dated July 27, 1994 and a further amended entry as filed on July 29, 1994.

■ The issue presented by this case is whether the initial successful bidder, the defendant, James Harmon, can now be held liable for the difference in his initial bid price which he failed to pay and the subsequent lower bid price paid by the second successful bidder. In the interim there were two appraisals of this property. Initially, the defendant, James Harmon, bid $65,000, which was in excess of the original appraisal of $45,000. Thereafter, Harmon failed to pay to the Sheriff of Washington County the monies that he bid for the property. On motion of the plaintiff, this property was again ordered appraised and again offered for sale. The second appraisal was for $36,000. The second appraisal resulted in a successful bid to persons other than Harmon. The second bidders bid only $24,000 and obtained the property.

Clearly, Harmon is not entitled to the return of his security deposit or down payment or any monies he has paid until these monies are applied to court costs, appraiser fees, advertising costs and other costs relating to the sale of the property.

Both parties cite and rely on *Union Trust Co. v. Monroe* (1930), 34 Ohio App. 47, 170 N.E. 369, and *Galpin v. Lamb* (1876), 29 Ohio St. 529.

The court of appeals in the *Union Trust* case cited the *Galpin* case as precedent for the holding that a person such as Harmon can be held responsible for the difference in purchase price and the expenses arising from his non-completion of the first purchase at a sheriff's sale and the subsequent re-sale to a third party. It is important to this court to look at the exact language used by the court of appeals in the *Union Trust* case. The court states that:

*"Where a person is the highest bidder at a sheriff's sale, and as such is duly declared to be the purchaser, and refuses, without cause, to fulfill his contract, he may be proceeded against in the same suit,* he having become a party thereto by the purchase made, and, *upon due notice and hearing, the court may order a resale and order the defaulting purchaser to pay the expenses arising from his non-completion of the purchase, and also any deficiency in price in the resale;*

this may be done without a confirmation of the sale, or the sale may be confirmed and the purchaser may be proceeded against by suit to recover the purchase price (*Galpin v. Lamb*, 29 Ohio St., 529, at page 534; *Mayer v. Wick*, 15 Ohio St., 548), and, in addition to the foregoing, the court may punish the purchaser by fine and imprisonment for contempt (*Camden v. Mayhew*, 129 U.S., 73, 9 S.Ct., 246, 32 L.Ed., 608)." (Emphasis added.) *Id.*, 34 Ohio App. at 51, 170 N.E. at 371.

In *Union Trust*, the court of appeals cited *Galpin v. Lamb*, which held that:

"In this state we have no statute on the subject, and whether the rule adopted in Pennsylvania prevails here we need not now definitely decide. Assuming for the purposes of the present case that it does, there is another fatal defect in the case of the plaintiff below.

"*Before the purchaser could be charged with the loss resulting from a resale, he ought to have been advised that the second sale was to be made at his risk.*

"*No such notice was given by rule of court or otherwise.* The purchaser might well have supposed from the order of the court refusing to confirm the sale, and directing the property to be again sold without qualification or condition, that the first sale had been abandoned, and that all parties had elected to take the chances of a second sale." (Emphasis added.) *Galpin*, 29 Ohio St. at 537.

■ It is clear to this court that in reading these two cases together that a person who does not complete his bid at a sheriff's sale and does not pay the amount of money that he promised as the successful bidder to the sheriff can be held responsible to a third party for any deficiency resulting from a subsequent sale that does not equal his sale only if the initial purchaser was advised that the second sale was to be made at his risk. This court has reviewed both the file in this matter and the file at the Washington County Sheriff's Office on this sale. This court can find nowhere that the defendant, James Harmon, was ever advised by either the court or the sheriff that the subsequent resale of the property, which he failed to purchase per his agreement, would be conducted at his risk. No notice was given to Harmon that he would be held responsible for any deficiency. Based upon the cases cited to this court and the failure to provide notice to Harmon that any resale of the property would be at his risk, this court is of the opinion that the plaintiff's motion for summary judgment is not well taken and the same is denied.

*Motion denied.*