In re RIVAL KNITTING CO., Inc.

(Circuit Court of Appeals, Second Circuit. March 26, 1923.)

Nos. 212–215.

1. Bankruptcy ⚖➔440—Order for resale, and adjudging payment of deficit by bidders at former sale, reviewable by petition to revise.

An order directing a resale of the bankrupt's assets and the payment of resulting deficit by bidders at a former sale is an order in reference to matters in the bankruptcy proceeding itself, arising after the filing of the petition, and pertains exclusively to the bankruptcy, and is reviewable under Bankruptcy Act, § 24b (Comp. St. § 9608), by petition to revise, and not by appeal.

2. Bankruptcy ⚖➔293(4)—Objection for want of personal service held sufficient objection to jurisdiction in proceeding for resale, and to fix liability of defaulting bidders at prior sale.

In proceedings for an order of resale, and to adjudge bidders at prior sale liable for resulting deficit, an appearance, by a bidder at the prior sale, on whom personal service was not had, in which he averred that he appeared involuntarily in obedience to an order to show cause, and that the order to show cause was not served on him, that he had no knowledge thereof, and that he was not a party to the adjudication resulting in the issuance of such order, held a sufficient objection to the jurisdiction.

3. Bankruptcy ⚖➔266—Purchaser may be required to make bid good.

Where a purchaser without cause refuses to make his bid good, he may be compelled to do so by rule or attachment issuing out of the court under whose decree the sale is had.

4. Bankruptcy ⚖➔266—Bidder, refusing to complete purchase, may be held liable for loss resulting from resale.

One bidding at a judicial sale of the bankrupt's property, and thereafter defaulting, may, in addition to the relief which may be granted directing him to complete his purchase by paying the entire sum bid, be made liable for any deficiency resulting from a resale caused by his refusal to make good his bid, and he may be proceeded against in the same suit by summary order, provided he be given full opportunity to meet the issues as to his liability.

5. Bankruptcy ⚖➔266—Affidavit for order to show cause why bidders should not be held liable for deficit because of default in bid held insufficient to warrant order.

In proceedings to compel bidders at sale of bankrupt's assets to complete purchase, and to have them on resale adjudged liable for any re-

sulting deficit, the receiver's affidavit upon which the order to show cause was based, which alleged that E. was the purchaser and that other respondents were interested jointly with E. in his bid, *held* insufficient as an allegation of fact that such others were interested, so that, in the absence of personal service on E., an order directing that he and the other respondents be held liable for resulting deficit was error.

Petitions to Revise and Appeals from Order of the District Court of the United States for the Eastern District of New York.

In the matter of the Rival Knitting Company, Inc., bankrupt. Proceeding against Abram Brawer and others for an order to show cause why they should not be adjudged jointly and severally liable for the amount bid by them on sale of property of the bankrupt. An order of resale was made, and the respondents adjudged liable for resulting deficit, from which order they appeal. Order reversed.

Samuel Fingerhut, of New York City, for petitioner and appellant Brawer.

Fox & Silinsky, of New York City (Samuel Silinsky, of New York City, of counsel), for petitioner and appellant Epstein.

Herman Glasser, of New York City (Chester Rohrlich, of New York City, of counsel), for petitioner and appellant Mindlin.

Nathan Friedman, of New York City, Attorney for petitioner and appellant Seligman.

Furst, Schwartz & Schwager, of Brooklyn, N. Y. (Max Olesker and Julius Schwartz, both of Brooklyn, N. Y., of counsel), for appellee.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

MANTON, Circuit Judge. [1] Apparently doubtful of their procedure, the appellants Brawer, Mindlin, Seligman, and Epstein have sued out petitions to revise, and the appellants Brawer, Mindlin, and Epstein have also appealed. The order in question refers to matters in the bankruptcy proceeding itself arising after the filing of the petition, and pertains exclusively to the bankruptcy. Under section 24b of the Bankrutpcy Act (Comp. St. § 9608), the order should be reviewed by a petition to revise. Ohio Valley Bank Co. v. Switzer, 153 Fed. 362, 82 C. C. A. 438; Kinkead v. Bacon & Sons, 230 Fed. 362, 144 C. C. A. 504. The appeals are therefore dismissed, and the questions presented will be considered on the petitions to revise.

The Rival Knitting Company, Inc., was petitioned a bankrupt, and on January 3, 1922, a receiver was appointed. On July 6th an order entered directed a sale of the corporation assets at public auction. After extensive advertising, a sale was had on July 24, 1922. Three days preceding the sale, the petitioners and the appellants, who were creditors of the bankrupt, met with their respective counsel and entered into an agreement to purchase the assets jointly. The petitioners Mindlin, Epstein, and Brawer asserted they authorized only a bid as high as $15,000, while Seligman, in his affidavit, places no limit on the authority to bid, but agrees that each was to participate to the extent of a one-fourth interest. Each promised to pay $1,000. Brawer and Epstein paid $1,000 each and Seligman advanced $2,000, which was paid on account of the bid price at the sale, which was made for

$22,000. At the sale James Epstein was given as the name of the purchaser. The agreement made authorized the bidders on behalf of the four petitioners to bid as high as $15,000 only. The terms of sale required the payment of one-third of the bid, and after negotiations with the auctioneer $4,000 was accepted by him upon representations of the attorney for Seligman that a pool had been formed and that the petitioners were making the purchase. Upon failure to complete the bid, there were demands made to do so. On July 25, 1922, all of the petitioners met in the office of one Friedman, attorney for Seligman, and they say that upon representations made by Mindlin that his business associate could dispose of the property at a profit, the following agreement was entered into:

"We, the undersigned, having purchased the plant of the Rival Knitting Mills, situated at No. 325 Gold street in the borough of Brooklyn, New York City, do hereby authorize Louis Rosenman to sell our bid of $22,000 for the sum of $25,000, the purchaser of the bid assuming the same, and paying us the sum of $4,000 deposited, together with $3,000, the difference between the purchase price and the amount for which the said plant is authorized to be sold by said Rosenman.

"This authorization expires on the 26th day of July, 1922, at 4 p. m. No commissions are to be charged by the said Louis Rosenman for procuring a customer.

"Dated New York, July 25, 1922.                    James Epstein.
                                                   "Abram Brawer.
                                                   "Samuel Seligman."

Upon failure to carry out the terms of the sale, this proceeding was instituted, directing the petitioners Epstein, Seligman, and Mindlin, to show cause why an order should not be made adjudging all, jointly and severally, liable for the $18,000 balance due on the bid, or, in the alternative, that a resale be had, and that, if any deficit arose by reason thereof, the petitioners be held personally responsible therefor. Brawer was not made a party to this proceeding, but the attorneys, Friedman and Glasser, were. Seligman and Mindlin were served personally, but personal service was not made upon Epstein. The order to show cause and the papers upon which the same were based were sent to him by mail. Mindlin and Seligman appeared in court in opposition to the motion. An order of resale was made, and the sale had, which resulted in a deficit of $4,006.17. In the order of August 8, 1922, all four petitioners were included, including Brawer, whose identity in the purchase then became known, and they were directed to appear on August 18, 1922, to be adjudged, jointly and individually, liable for the deficit.

On August 18, 1922, the date fixed in the order to show cause, the four petitioners appeared in court, both in person and by counsel. Each filed an affidavit and remanded a denial of the receiver's application. The petitioners Epstein and Brawer, objected to the jurisdiction of the court; Epstein, because he was not personally served, and Brawer, because he was never served or made a party to the proceeding as originally instituted. However, the District Judge announced that he assumed jurisdiction over their persons, and they are now sought to be held on the theory that, because of their personal appearance, the court obtained jurisdiction of them in this proceeding. In their plea

to the merits, each alleged that they formed a limited copartnership, with authority vested in their representative to offer a bid at the sale of not more than $15,000, and claimed that this representative exceeded his authority in bidding as high as $22,000. Epstein avers:

"I appear in these proceedings involuntarily, but in obedience to an order granted in these proceedings * * * requiring me, as one of the respondents in said order to show cause why I * * * should not jointly and severally be held liable for any deficiency that may result in a resale of the bankrupt's assets, for the reason that the said order to show cause was not served upon me, and I had no knowledge of its issuance, and I was not a party to the adjudication contained in the said order of August 8, 1922. I beg leave to present my objections to these proceedings. This court has not acquired any jurisdiction of my person by reason of the nonservice of the said order to show cause."

[2, 3] We think this was a sufficient objection to the jurisdiction. The claim that Epstein was not personally served is not disputed. This was a judicial sale, and if Epstein was a bidder, in a proceeding properly instituted, where personal service was made upon him, after he refused to carry out the terms of his bid, the court, without affirming the sale by a formal order, could hold him to his offer and could order a resale in the meantime at his risk, both in respect to the expenses of the resale and any deficits resulting therefrom.

"Where a purchaser refuses, without cause, to make his bid good, he may be compelled to do so by rule or attachment issuing out of the court under whose decree the sale is had." Camden v. Mayhew, 129 U. S. 85, 9 Sup. Ct. 249, 32 L. Ed. 608.

See also, Blossom v. Railroad Co., 3 Wall. 196, 18 L. Ed. 43.

Chancellor Kent in Brasher v. Van Cortlandt, 2 Johns. Ch. (N. Y.) 505, said:

"If no order of this kind could be made in this case, it would follow that not only the purchaser, but the committee of the lunatic, would be permitted to baffle the court, and sport with its decree. * * * I have no doubt the court may, in its discretion, do it in every case where the previous conditions of the sale have not given the purchaser an alternative."

[4] We have no doubt that, in addition to the relief which may be granted directing the purchaser to complete his purchase by paying the entire sum bid by him, he may be made liable for any deficiency resulting from the resale caused by his refusal to make his bid good. He may be proceeded against in the same suit by summary order, providing he is given the full opportunity which enables him to meet the issues as to his liability. Where a question of fact is presented, such as authority to make the bid, or whether the bid was in fact made by the person sought to be held liable, full opportunity to present his defense should be given before the final order is entered. In order to hold the bidder, it should clearly appear that he is the purchaser, that he complied with the conditions of the sale in form, and that he has become liable to pay as promised, and that he has failed to pay, in which case the summary power of the court may be exercised.

[5] We think it has not been established that the petitioners, other than Epstein, were the bidders at the sale. The affidavit of the receiver, upon which the order to show cause was based, sets forth that

Epstein alone was the purchaser. It relates to some conversations had with attorneys representing the various appellants, which are accusations that the appellants Seligman and Mindlin were interested in a pool with Epstein to make this purchase. It in no way involves Brawer. This is insufficient as an allegation of fact that they were interested. Therefore, upon this record, the court below could but consider Epstein as the sole purchaser. Since Epstein was not personally served, the order of August 8th must be considered a nullity as to him. It was error to grant the order directing that he and the other appellants be held liable for the deficiency. Upon a proceeding properly instituted, the receiver may apply for such relief as he may be advised.

Order reversed.