## In re DALLEK BROS., Inc.

District Court, S. D. New York.
July 25, 1934.

Samuel Newfield, of New York City (David M. Schwartz, of New York City, of counsel), for trustee.

Hyman Solniker, of New York City, for respondent.

PATTERSON, District Judge.

The trustee in bankruptcy obtained an order on Louis Resnick to show cause why he should not pay the sum of $1,025.64, representing the loss to the estate from Resnick's failure to fulfill his bid at the first sale of the bankrupt's property. Resnick appeared

and filed an affidavit in which he denied that he had ever purchased the property. The issues were referred to John E. Joyce, as referee, who took testimony and filed a report to the effect that Resnick was the purchaser, having authorized one Bellows to bid the property in for him and Bellows having made the top bid of $750. He found, however, that the loss to the estate because of Resnick's default was only $426.97, and recommended that the motion be granted to the extent of ordering Resnick to pay $426.97 to the trustee. His report is now before the court for confirmation.

Certain facts are undisputed. An involuntary petition was filed against the bankrupt on January 20, 1933. On January 31st there was an auction sale of the bankrupt's property under direction of the receiver. Bellows made the highest bid, $750, giving Resnick's name as the purchaser and paying $75 as a deposit, and the auctioneer declared the property sold to Resnick. Resnick did not take the goods or pay the balance. The receiver's attorney wrote him a letter demanding that he carry out the sale. Resnick received the letter but did nothing. The receiver then obtained an order directing Resnick to show cause why he should not consummate the sale, but was unable to make service on him. An ex parte order, dated February 27, 1933, was then procured for a resale of the assets for the account of Resnick, described as "the previous purchaser." Resnick received timely notice of this sale as being for his account, by letter from the receiver's attorney, but paid no attention to it. On the second sale held on March 15, 1933, the property brought only $499.55. The trustee then obtained the order to show cause why Resnick should not be ordered to pay the deficiency. The loss to the estate consisted of the difference in the bid prices and rent and other charges in the interval between the two sales.

Two points are pressed in opposition to the referee's report: First, that Resnick was not the purchaser at the first sale, and, second, that in any event the proceedings to charge him with the deficiency were defective and irregular.

1. The referee found that Resnick was the purchaser at the first sale. Resnick testified that he was present at the sale but left as soon as the bid reached $500; that he neither bid himself nor authorized any one to bid for him. His testimony was corroborated, in part at least, by two of his companions who were also at the sale, Caspert and Solerwitz. On the other hand, the auctioneer testified that Bellows had made the final bid of $750 and

had given Resnick as the purchaser; that he had seen Resnick and Bellows talking together that morning; that later in the day, when he told Resnick to pay the balance and take away the merchandise, Resnick said that the men who were in with him all backed out of the deal, that no one wanted to go through with it, that they were letting him hold the bag. The most cogent evidence in behalf of the trustee, however, is that of Newfield, who was the attorney for the receiver. Newfield testified that a few days after the sale Resnick and Caspert called to see him; that Caspert said in Resnick's presence that Resnick was "in a hole"; that he had not inspected the goods prior to the sale, assumed that they were new goods, and accordingly made a bid of $750; that after the sale he found most of the merchandise to be used and realized that he had made a bad bargain. Caspert asked Newfield to make an allowance for Resnick, to make the figure $500 instead of $750, in which event Resnick would take the goods. He also said that others who were partners with Resnick on the purchase had backed out.

Newfield's testimony is straight forward and carries conviction. The statements made by Caspert were in Resnick's presence and in his behalf. None of them were contradicted by him. They are equivalent to direct admissions by Resnick that he was responsible for the bid. When the discrepancies, evasions, and improbabilities found in the testimony of Resnick and his two witnesses are considered, it is by no means surprising that the referee found that the facts were as testified to by Newfield. His finding that Resnick was the purchaser at the first sale is supported by the decided weight of evidence.

Affidavits by Resnick and Bellows as to what happened at the sale were handed up on the argument on the referee's report. Needless to say, such affidavits must be disregarded. The reference was for the purpose of taking testimony and both sides rested their case at the conclusion of the hearings before the referee.

2. Resnick contends that proper steps were not taken to charge him with liability for deficiency; more specifically, that the order of February 27, 1933, authorizing a resale on his account, was made ex parte and not on notice to him. The facts, in brief chronological sequence, are that Resnick purchased the property on the original sale; that he later sought to repudiate responsibility; that the receiver then took out an order directing him to show cause why he should not consummate the sale but was unable to effect service on

him; that the receiver then obtained an ex parte order directing a second sale for his account; that timely written notice was received by him that the second sale was to be on his account; that the second sale resulted in a deficiency; that the trustee then procured an order to show cause why he should not be held for the deficiency; and that on the return of such order to show cause and on Resnick's denial that he was the original purchaser full proof was taken as to whether or not he had been the purchaser.

■■ The summary jurisdiction of the bankruptcy court to give redress against a delinquent purchaser at a bankruptcy sale is settled. In re Rival Knitting Co., 289 F. 960 (C. C. A. 2); In re Atlas Cabinet Works, Inc., 8 F. Supp. 609, decided by this court August 17, 1931. It is the same jurisdiction that a court of equity has over purchasers at a judicial sale, the theory being that the purchaser makes himself a party to the suit and undertakes to carry out the order of the court. Camden v. Mayhew, 129 U. S. 73, 9 S. Ct. 246, 32 L. Ed. 608; Wood v. Mann, Fed. Cas. No. 17,954, 3 Sumn. 318; Brasher v. Cortlandt, 2 Johns. Ch. (N. Y.) 505. The jurisdiction may be exercised either by order compelling the purchaser to complete his purchase and make good his bid, or by order requiring him to pay a deficiency arising out of a second sale. But in such proceedings the purchaser must be given full opportunity to meet the issue as to his liability; and if questions of fact, such as whether he was in truth the purchaser, are involved, he must be given a fair opportunity to present his defense. In re Rival Knitting Co., supra.

■ It is doubtless true also that the recalcitrant purchaser must have notice in some fashion (unless notice be waived at the time of the first sale) that a second sale is to be held and that such second sale is to be on his account; otherwise he is not liable for a deficiency. Bayne v. Brewer Pottery Co., 90 F. 622 (C. C. Ohio); In re Atlas Cabinet Works, Inc., supra.

■ Resnick had full opportunity here to offer evidence against being charged for deficiency prior to the making of any order so charging him. The reference of the case to a referee was for that very purpose. He also had ample notice of a resale on his account. The notice was by letter, it is true; but the letter was properly addressed and was read to him by some one in his office. All his substantial rights in the matter were thus observed, and he had every opportunity to protect his interests. It is not required, in my opinion, that he should also be given notice, by personal service, of the application to be made for a second sale. The procedure in these matters should be kept as simple and inexpensive as possible, consistently with the substantial rights of the parties. In a city as great as this, it is no easy matter to make personal service on persons. The speed that is requisite in the administration of bankrupt estates, particularly in the reduction of assets to cash, in order to keep down expenses and leave something for creditors, will be greatly impeded if the receiver or trustee cannot bring an application for resale without prior personal service of the papers on a defaulting purchaser on the original sale. Any such requirement would also seriously impair the efficacy of auction sales of bankrupts' assets.

■ It is argued that the Rival Knitting Co. Case, supra, makes mandatory personal service of the application for resale on the defaulting purchaser. I do not so read that case. There Epstein, whose position was analogous to that of Resnick here, was neither served personally with the papers on application for resale nor was he given an opportunity, on the later application to charge him with deficiency, to present evidence in support of his position that he had not purchased the goods. He thus was deprived altogether of his day in court. The Rival Case stands for the proposition that before entry of final order holding an alleged purchaser for deficiency in a summary proceeding, he must be afforded an opportunity, at one time or another, to present proof in substantiation of his denial that he ever purchased, unless, of course, the denial is obviously sham. The court pointed this out clearly (289 F., at page 963). The same is true in summary proceedings for a turnover. In re Frank, 182 F. 794 (C. C. A. 8); In re Harry L. Sugarman, Inc., 3 F.(2d) 436 (C. C. A. 2). In the present case, Resnick had his day in court before entry of any final order charging him with deficiency. The case was referred to a referee, and the referee took all the testimony that Resnick offered as tending to show that he had never purchased. The intermediate order of resale, on which he was not heard, was not treated as establishing his ultimate liability to any extent.

The referee's report will be confirmed. There will be an order directing the respondent to pay the sum of $426.97, together with the costs and disbursements of the proceeding.