## FREEHILL v. GREENFELD.
### No. 234, Docket 22649.

United States Court of Appeals
Second Circuit.

Argued April 13, 1953.

Decided May 29, 1953.

James J. Geraghty, James Freehill, New York City, for appellant.

Edward V. Loughlin, New York City, for appellee.

Aaron Levy, Roger S. Foster, General Counsel, Washington, D. C., George Zolotar, Special Counsel, New York City, David Ferber, Special Counsel, Securities and Exchange Commission, Washington, D. C., amici curiae.

Before L. HAND, AUGUSTUS N. HAND and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from an order in bankruptcy directing Freehill, the trustee in reorganization of the debtor, Toy Pop Corporation, under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., to return to the defendant, Greenfeld, a deposit of $2500 which Greenfeld paid upon the execution of a contract between him and Freehill for the sale of the debtor's assets. The judge held that Greenfeld was released from the contract because, although it was made "subject to the approval of the court," "the trustee deemed it necessary that such sale be consummated by way of a plan of reorganization," according to which the property was offered at public auction before it was delivered. The facts were as follows: The debtor filed a voluntary petition under Chapter X on September 8, 1949, and Freehill was appointed trustee on November 23rd following. He did not continue the business, but in August 1950 sold the "plant" (whatever that may mean) for $91,000, reserving the patents, trademarks, good will and some of the equipment. Thereafter he decided to liquidate the assets, and on October 27, 1950 he and Greenfeld entered into a writ-ten contract to sell the rest of the property for $15,000, Greenfeld paying down $2500, as earnest money. The third article of the contract read as follows: "This agreement is subject to the approval of the court and in the event such approval is not obtained, the said trustee shall return the deposit hereinabove referred to and all rights of either party hereunder shall terminate." For reasons not clearly appearing, the trustee delayed filing any plan of reorganization until May 31, 1951; and when he did, it provided that the remaining assets should be sold under the direction of the court at auction for not less than an upset price of $15,000. On June 14, 1951, the court approved this plan as fair and equitable, the creditors accepted it, and on August 14th the court confirmed it. On the afternoon of that day the property was offered for sale in open court and no bids were received, whereupon the trustee moved to confirm the sale to Greenfeld, who, being present, objected, and eventually the court released him. It is his position, first, that the sale of the property by competitive bidding "vitiated the agreement," and, second, that the contract was no more than a bid. The court did not agree as to the last point, but assumed that the bid had been accepted and that a bidder "may not withdraw his bid prior to the confirmation by the court." He held, however, that the phrase in the contract "subject to the approval of the court" presupposed that the reorganization had then reached a stage where the trustee might move for confirmation without preparing a plan of reorganization which the creditors must accept and the court confirm, especially when the plan provided for a public sale to the highest bidder at the same upset price as the contract price.

The court was plainly right that an accepted bid at a judicial sale, subject to confirmation, binds the bidder, though it does not bind the court.[1] It is to be considered as a contract concluded between the parties, but subject to the consent of a third person; indeed, it would otherwise

1. Camden v. Mayhew, 129 U.S. 73, 9 S.Ct. 246, 32 L.Ed. 608; In re Huguenot Publishing Co., 2 Cir., 83 F.2d 258; Gordon v. Woods, 1 Cir., 189 F.2d 76; Williston on Contracts, § 29.

be difficult to conduct judicial sales at all. The question at bar therefore comes down to whether the contract should be read to contain the implied condition that the "approval of the court" meant an approval without exposing the property to public bidding for a better price. We can see no basis for such an interpolation. Greenfeld knew that he was dealing with a trustee in reorganization under Chapter X; indeed it was only as such that Freehill could deal with him at all. By what reasoning he could suppose that he had not subjected himself to whatever conditions the Reorganization Court might impose upon its "approval," we cannot understand. It is true that he may have supposed that a plan of reorganization had been confirmed, but he had no basis for such an assumption; and, besides, even so, there was no reason for him to assume that the plan might not incorporate that part of the Act that provides for "the sale of all or any part of its" (the debtor's) "property * * * at not less than a fair upset price".[2] Certainly an "upset price" foreshadows, if it does not presuppose, competitive bidding usually at a public auction. He could have informed himself by inquiry of the extent to which the reorganization had gone: perhaps, in fact he had. But whether he had or not, knowing as he did that he was dealing with such a trustee, he took his chances on what conditions the court might impose upon its "approval."

█ The contract fixed no date for performance, and obviously could not do so; and it is true that Freehill delayed for ten months securing the order that approved the sale. Moreover, beginning about in January, Greenfeld's attorney kept pressing him more or less steadily to get the approval. Nevertheless, throughout this period Greenfeld never tried to fix a date at which delivery must be made or he would call off the sale. Moreover, in his testimony he did not suggest that it

was the delay that made him do so: then and now he relies only upon the fact that the property was put up at a public sale. It is of course well settled in the case of a sale of land, where time is never of the essence, that the purchaser, even though the date be fixed, must give the vendor notice a reasonable time in advance of the day on which he will insist upon performance;[3] and, when as here, no time is fixed for the delivery of personal property, the same doctrine should apply.[4]

Order reversed.

---

2.  § 616(10), Title 11, U.S.C.A.

3.  Boswell v. United States, 5 Cir., 123 F.2d 213; United States v. Stott, 8 Cir., 140 F.2d 941.

4.  A. Klipstein & Co. v. Dilsizian, 2 Cir., 273 F. 473, 477.