■ GAFFIN & MAYO, P. C., Plaintiff, v EDWARD MOK et al., Respondents, and HAROLD GLANTZ et al., Appellants. — Order of Supreme Court, New York County (Leonard N. Cohen, J.), entered February 3, 1984, granting the sellers summary judgment on their counterclaim to the down payment, held in escrow in this interpleader action, and $5,000 on their cross claim against the buyers, and denying the relief sought by the buyers, including specific performance and an injunction against the sellers interfering with consideration of the purchase application, unanimously modified, on the law, to the extent of denying sellers summary judgment on their counterclaim as to the down payment held in escrow, and otherwise affirmed, with costs.

Defendants Mok contracted to sell their cooperative apartment at the Sovereign Building, 425 East 58th Street in Manhattan, to defendants Glantz for $564,000. The terms were 10% down upon signing of the contract, to be held in escrow by the sellers' attorneys (plaintiff herein) and the balance of $507,600 due at closing. In the event of a default by sellers, the buyers reserved their rights to legal or equitable remedies. If, on the other hand, the buyers defaulted, the sellers would be limited to retention of the down payment as liquidated damages. The contract, which was made subject to approval by the cooperative corporation, was executed on August 11, 1983. Documentation required for approval by the cooperative board of directors was to be provided by the buyers within five days of execution of the contract. Although the closing date was fixed as August 29, 1983, the parties apparently contemplated a later closing. It is undisputed that the board of directors of the corporation was not scheduled to meet until after Labor Day. This was known to the parties.

Assuming such a delay, the contract provided that "beginning September 1, 1983 up to the time of closing or the termination of this Agreement, whichever is earlier", the buyers would pay sellers $5,000 per month plus taxes and assessments levied by the corporation, or $6,500 per month in the absence of any such taxes and assessments. "Termination" was defined as default by either party or refusal by the board of directors to approve the transaction. Monthly maintenance on the apartment was considerably less than the amounts provided for under the contract, which were fixed to compensate the sellers for having to maintain two separate abodes until closing on the premises in question. The monthly payments were to be "due and payable on the first day of the month".

Paragraph 22 of the contract, which sets forth the obligations of the escrowee, stressed the independent nature of the buyers' monthly obligation, exclusive of the closing of title: "[I]f the contract fails to close due to the fact that the Purchasers fail to obtain the approval of the Board of Directors and Purchasers have failed to make [these monthly] payments * * * Escrowee shall pay to the Sellers the sums required * * * out of the down payment and the remainder shall be delivered to the Purchasers."

The language of the contract thus made it clear that should the buyers fail to obtain board approval, the down payment was to be returned to them. But if such failure were accompanied by the buyers' failure to make the monthly payments, then those payments were to be deducted and paid over to the sellers before the balance of the down payment was returned to the buyers.

By September 2, 1983, the buyers had not yet submitted to the board the documentation necessary for consideration and approval of the transaction, despite a reminder letter from the sellers' attorney a week earlier, to which the buyers' attorney had responded that the buyers were "in the process of assembling the materials for submission to the Board". Nor had the buyers made the monthly payment due on September 1. The sellers' attorney (plaintiff escrowee) thereupon notified the buyers that unless the "default" was remedied by September 7, five days hence, they would turn over the entire down payment to the sellers. The buyers' attorney immediately responded by cautioning against such precipitous action.

Documentation in the form of correspondence in support of the application was forwarded to the cooperative corporation by buyers' attorney on September 27. Upon receipt of notice of this submission, sellers' attorney wrote back that (1) the sellers already considered the contract to have been terminated by

reason of the buyers' default, (2) the cooperative corporation was being instructed "not to consider" buyers' purchase application because of this default, and (3) a stakeholder's interpleader action was being commenced in order to dispose of the down payment. Within a week, on October 4, buyers' attorney sent sellers' attorney the buyers' check for $5,000, as "rental for the month of September 1983, pursuant to the Contract of Sale". The check was rejected and returned.

The sellers' attorneys thereupon brought this interpleader action as stakeholders in order to dispose of the escrow. The sellers counterclaimed for the full amount, asserting their right to the down payment as liquidated damages under the terms of the contract that they now considered terminated. They also cross-claimed against the buyers for $5,000 (or $6,500, depending upon whether the board had levied a transfer tax on the transaction) per month, commencing September 1, 1983. The buyers counterclaimed for specific performance or return of the escrow in full, and also cross-moved for an injunction against the sellers' interference with the purchase application.

Special Term denied the buyers' motion for injunctive relief and granted the sellers summary judgment on their counterclaim for the escrowed down payment as liquidated damages. The court also granted the sellers' cross claims to the extent of $5,000 for the first monthly payment only, which was due September 1, 1983, prior to the termination of the contract. The buyers appeal.

It cannot be disputed that this contract was terminated by the sellers within one month of its execution. The only question is whether such termination was justifiable or whether it was premature. It is apparent, not only from the terms of this contract but also from the circumstances surrounding the execution of the contract, that time was not of the essence in closing the transaction. That being the case, it is a question of fact whether the buyers made a good-faith effort to comply in a timely fashion with their obligation under the contract to provide the documentation necessary for board approval (*4200 Ave. K Realty Corp. v 4200 Realty Co.*, 89 AD2d 978; cf. *Grace v Nappa*, 46 NY2d 560). Once the sellers instructed the board not to consider the buyers' application, the question of board approval became academic. But what remains as an issue of fact is whether this notification of the board by the sellers was premature, thus foreclosing the buyers' opportunity to consummate this purchase.

We reject Special Term's finding that the buyers' reasons for tardiness in complying with their obligations were irrelevant, in

light of contract terms which both parties clearly and necessarily understood could not be carried out within the stated time frame. If, as is undisputed, the sellers understood that the board would not convene to consider this application until after Labor Day, then it was obvious to all that the closing could not take place by August 29, as stated in the contract. It thus becomes a question of fact as to whether other circumstances constituted a sufficient basis or a mere pretext for considering the buyers to be in default. The sellers may have had a right to terminate the contract, by reason of the buyers' failure to make the monthly payments. However, under the terms of the contract, this, in and of itself, did not give the sellers the automatic right to retain the down payment as liquidated damages.

The monthly payments were the buyers' obligation regardless of whether they complied with or defaulted under other terms of the contract. The first payment was clearly due on September 1, 1983. There is no dispute that both parties to the transaction considered the contract still viable as of that date. The earliest that either of the parties considered the contract to be terminated was September 7, as consistently evidenced in the correspondence from the sellers' attorney. The buyers, on the other hand, still considered the contract viable in early October, when they sought unsuccessfully to deliver a $5,000 check for the September payment. The sellers' rejection of this check did not alter the fact that the buyers had been obligated to make such a payment on September 1. We need not consider whether the sellers' acceptance of that check might have breathed new life into what they considered to be a terminated contract. They were entitled to deduct such payment out of the down payment, under paragraph 22 of the contract.

The sellers' entitlement to a $5,000 payment on September 1, 1983 was not dependent upon a determination as to whether the buyers had properly performed their obligations in furtherance of a closing of the transaction. This was an independent obligation. Accordingly we affirm so much of the order as grants summary judgment in that amount, independent of a ruling on the right to the down payment held in escrow as liquidated damages, which must await a trial. Concur — Sandler, J. P., Asch, Silverman, Fein and Alexander, JJ.