Surinder K. TREHAN and Grace
Trehan, Plaintiffs,

v.

Anton VON TARKANYI, Defendant.

Bankruptcy Nos. 81 B10161 (BRL),
81–5656–A (BRL).

No. M–47 (MP).

United States District Court,
S.D. New York.

May 2, 1988.

Shea & Gould, New York City by Martin L. Shelton, for Alex Spizz and Nachamie, Kirschner, Levine & Spizz.

Cohen & Cohen, New York City by Elliott R. Cohen, for defendant.

## OPINION AND FINAL ORDER

MILTON POLLACK, Senior District Judge.

This matter was remanded to the Bankruptcy Judge on August 28, 1986, to reconsider whether the default judgment entered in favor of the Trehans against Von Tarkanyi by the Bankruptcy Court on September 10, 1982, in the amount of $450,000 plus interest is void and whether there was a fraud on the Bankruptcy Court requiring that the judgment be set aside. The sad details of this affair are discussed at length in this Court's earlier opinion, 63 B.R. 1001.

This Court stated in the remand:

In light of the procedural improprieties which pervaded these [bankruptcy] proceedings, and the omissions and misrepresentations made by the plaintiffs and their counsel in the complaint, and renewed by them in the hearings and subsequent affidavits addressed to both the Bankruptcy Court and this Court, a gross injustice may have resulted.

Responsive to the remand, an evidentiary hearing was scheduled by the Bankruptcy Judge to commence on July 13, 1987. The Judge explains the delay between the date of the remand, August 28, 1986, and the scheduled hearing, July 13, 1987, in part, to the entry on April 10, 1987, of an order by him relieving the lawyers to the plaintiffs-judgment creditors as their counsel. Ultimately the plaintiffs failed to appear before that Court and the Court conducted the remand hearing in the absence of plaintiffs, a hearing which spanned the period

**921**

from July 13 to November 5, 1987, to hear two witnesses on direct and cross-examination, namely, the former lawyer for plaintiffs, Mr. Spizz, and the former lawyer for defendant, Mr. Harris.

As a result the Bankruptcy Judge reported on March 21, 1988, in Proposed Findings of Fact and Conclusions of Law (to which no one excepted within the time presented therefor) that

The now uncontroverted District Court record demonstrates that at least Mr. Trehan perpetrated a fraud on the court by submitting a "phony" power of attorney purporting to authorize Bailey to sign the contract of sale and by filing a forged amended contract purporting to delete the disabling mortgage contingency clause. The record demonstrates that the Trehans knew both documents were forgeries. [p. 8]

In its conclusions, the Bankruptcy Court states:

14. In light of the fraud perpetrated upon the Court by the Trehans in connection with the adversary proceeding, I find that the Trehans' bad faith conduct in perpetrating the original fraud by resisting the motion to vacate the default before the Bankruptcy Court violates New Rule 11. [p. 26]

Further, the Judge wrote in conclusion number 25, in part:

Rule 60(b) specifically reserves the court's inherent right to set aside a judgment obtained through fraud upon the court. [p. 30]

and finally as a Conclusion on Reconsideration:

26. As a result of the fraud perpetrated by the Trehans the default judgment is void and must be set aside as a nullity. [p. 30]

Also remanded to the Bankruptcy Court was the following direction by the District Court:

The Court should also consider whether Rule 11 of the Federal Rules of Civil Procedure is applicable and should be invoked against the Trehans and their attorneys, given the irregularities which occurred and the renewal of these impro-

prieties by plaintiffs and their counsel as late as February 1986.

Responsive thereto, the Bankruptcy Judge has found and reported that

27. For the willful violation of Rule 11 established in the record before the District Court, the appropriate sanction is to strike the Complaint filed by the Trehans commencing the within adversary proceeding and to order the Trehans' [sic] to pay Von Tarkanyi $5,000 for attorney's fees.

28. Neither Nachamie, Kirschner, Levine & Spizz, P.C. nor Alex Spizz violated Fed.R.Civ.P. 11. The imposition of sanctions is not warranted. [pp. 30–31]

■ Suffice to say that the Court agrees with the factual and legal finding that the Trehan adversary proceeding instituted in the Bankruptcy Court and the procurement and entry of a default judgment against Von Tarkanyi therein were a fraud on the Court and that the judgment entered September 10, 1982, is void and should be vacated and set aside on the Bankruptcy Court docket and declared null and void and the said adversary complaint should be dismissed with prejudice. The Trehans should be ordered to pay Von Tarkanyi $5,000 for attorney's fees and costs of these proceedings and Von Tarkanyi should have execution therefor forthwith.

■ The Bankruptcy Judge also considered the question of sanctions against the Trehans' attorney for conduct during the proceedings in the Bankruptcy Court and has made two findings with respect to the coordinating conduct of the Trehans' attorney. The learned Judge opined that "this [Bankruptcy] Court had the benefit of a more developed record not available to the District Court." [p. 3] Consequently, the Judge added that "the record developed before me clearly establishes that Mr. Spizz and his firm were unaware of the Trehans' fraudulent conduct and were not guilty of conduct mandating the award of sanctions." [p. 3]

Having said that, the Judge later finds in his report that

9. In determining whether Rule 11 sanctions should be imposed upon [the

Spizz law firm], this Court's inquiry is limited to: (a) an analysis under the Old Rule 11 standard of the circumstances surrounding Mr. Spizz's signing the complaint ...; and (b) an analysis under the New Rule 11 standard of the circumstances surrounding Mr. Spizz's signing the January 17, 1986 affidavit and memorandum in opposition to the motion made in the Bankruptcy Court to vacate the default.... *This court will leave to the District Court the determination* as to whether sanctions should be imposed based upon the circumstances surrounding the submission of the affidavit and memorandum to the District Court. [pp. 24–25 (emphasis added)]

The Bankruptcy Judge found "Mr. Spizz [in the Bankruptcy Court adversary proceeding] did not violate Old Rule 11 and was in full compliance therewith." [Conclusion 11, p. 25] Consequently that finding relating to the 1981–1982 events will not be reviewed again as not clearly erroneous albeit it is doubtful that this Court would have reached the same conclusion on the uncontrovertible facts.

Similarly, with respect to the 1986 events which occurred in the Bankruptcy Court, the Judge submitted proposed conclusions that "Mr. Spizz did not violate New Rule 11 and was in full compliance therewith" because allegedly he "conducted a reasonable inquiry as to the statements contained [in his 1986 opposing papers], and that they were well grounded in fact and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." [Conclusions 12, 13, pp. 25–26]

The Judge states, "I find that the Trehans' bad faith conduct in perpetuating the original fraud by resisting the motion to vacate the default before the Bankruptcy Court violates New Rule 11." [Conclusion 14, p. 26] The findings made and conclusion thereon are confirmed.

A reasonable investigation in 1986 of the matters known to Mr. Spizz and raised by Von Tarkanyi with the awareness by that time of all the background facts of the fraud and the irregularities in the Bankruptcy Court would have deterred Mr.

Spizz from opposing, as he did, the motion in the District Court to vacate and from subsequently filing a notice of appeal from this Court's order of remand. Attorney's fees may be assessed for the period of time after the frivolous nature of the opposition became apparent. *See Laue v. Sotheby Park Bernet, Inc.*, 758 F.2d 71 (2d Cir. 1985) (per curiam); *City of Yonkers v. Cassan*, 844 F.2d 42, 49 (2d Cir.1988). In the latter case the rule was clearly expressed:

> Thus, if at the time of their filing the fraud causes of action had no proper basis in fact or law, and under the circumstances, the attorney who signed the complaint should have known that, sanctions are mandatory. Fed.R.Civ.P. 11 advisory committee's note to the 1983 amendment.

*Id.*, at 49.

Suffice it to say, that Mr. Spizz, should have been more circumspect but the Court is prepared to follow the findings and opinion of the Bankruptcy Judge who was more intimately acquainted with the proceedings and the personalities being dealt with.

The default judgment of September 10, 1982, is to be vacated and expunged forthwith from the records and the amended complaint in the adversary proceeding is to be dismissed with prejudice.

So Ordered.

United States Bankruptcy Court

Southern District of New York

Bankr. No. 81 B 10161 (BRL)

Adv. No. 81–5656A

In re Surinder K. Trehan and Grace Trehan, Debtors.

Surinder K. Trehan and Grace Trehan, Plaintiffs,

against

Anton Von Tarkanyi, Defendant.

*PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW ON REMAND*

March 22, 1988.

### INTRODUCTION

In accordance with the Opinion and Order of the Honorable Milton J. Pollack,

United States District Judge, dated August 28, 1986 (the "Remand Order"), the following constitute Findings of Fact and Conclusions of Law as to (1) whether Surinder and Grace Trehan (collectively the "debtors or Trehan") and/or Alex Spizz, Esq. and his law firm, Nachamie, Kirschner, Levine & Spizz (collectively "NKLS") their attorneys, committed a fraud upon this Court in connection with the conduct of the within adversary proceeding and the entry on August 30, 1982 of a $450,000 default judgment (the "Default Judgment"), and (2) whether Rule 11 sanctions should be imposed upon the Trehans and/or NKLS.

In accordance with the Remand Order, an evidentiary hearing was scheduled to commence on July 13, 1987. The gap between the entry of the Remand Order and the commencement of the hearing was, in part occasioned by the April 10, 1987 entry of an order relieving NKLS as counsel to the Trehans. This order was entered because of the potential conflict of interest inherent in the issues this Court was charged to review on the remand. Therefore, to give the Trehans an opportunity to retain substitute counsel, that order stayed further proceedings for sixty days to afford the Trehans that opportunity. Notwithstanding that opportunity, neither substituted counsel nor the Trehans appeared in court on the date set for the hearing on the remand.

In light of the Trehans failure to appear, this Court is left to make its findings as to the Trehans conduct based solely upon the findings made by the District Court after a lengthy evidentiary hearing in which the Trehans participated and Mr. Trehan was called as a witness. Based upon that record, this Court must conclude that (1) the *Trehans* committed a fraud upon this Court in connection with their conduct of this adversary proceeding rendering the Default Judgment a nullity, and (2) that sanctions are appropriate.

During the course of the remand hearing, which at the parties request spanned several months, NKLS called two witnesses and introduced numerous exhibits. Mr. Von Tarkanyi chose not to call any witnesses. Alex Spizz was called as the first witness and his examination spanned two days. In addition, NKLS called Leon S. Harris, Mr. Von Tarkanyi's former counsel. Both witnesses were cross-examined by Mr. Von Tarkanyi's counsel. I found both witnesses' testimony to be clear, convincing, credible and essentially unrebutted. Thus, though these findings differ in many respects from the observations as to NKLS' conduct set forth in the Remand Order, the differences must be attributed to the fact that this Court had the benefit of a more developed record not available to the District Court. As will be set forth below, the record developed before me clearly establishes that Mr. Spizz and his firm were unaware of the Trehans' fraudulent conduct and were not guilty of conduct mandating the award of sanctions.

## FINDINGS OF FACTS

*The District Court Findings—The Trehans' Conduct*

The following is a brief overview of the findings made by the District Court as they pertain to the Trehans' conduct before this Court in connection with their bankruptcy case and the adversary proceeding. *See, Trehan v. Von Tarkanyi*, 63 B.R. 1001 (S.D.N.Y.1986). These findings were made in the context of a motion made by defendant Von Tarkanyi pursuant to F.R.Civ.P. 60(b) to set aside the Default Judgment as void.

In 1981, Mr. Von Tarkanyi, a New Zealand citizen, resided in Australia. He was President of Unigulf Petroleum, Inc. ("Unigulf"), which had an office in New York City. In June 1981, Von Tarkanyi came to New York in connection with Unigulf business and stayed in a New York hotel. He also was interested in acquiring a New York Unigulf corporate apartment.

In July 1981 a real estate broker, accompanied by Mr. Trehan, showed Von Tarkanyi the Trehan's cooperative apartment located in Manhattan's fashionable Riverhouse. The parties discussed a sale price of $1,900,000, of which $19,000 was to be escrowed at the time a contract of sale was signed, and $171,000 to be paid 45 days

later. The contract was to be conditioned upon Von Tarkanyi obtaining mortgage financing of $1,425,000 by September 30, 1981 and on coop board approval. During their discussions, Mr. Trehan did not reveal that he and his wife were chapter 11 debtors.

A contract was subsequently prepared, but it was never signed by Von Tarkanyi, who left for Australia on August 4, 1981. Soon thereafter, Trehan met with Trevor Bailey, a Unigulf corporate officer. Trehan presented Bailey with a contract of sale and told him it must be signed immediately to enable the board of directors of the coop to begin to consider the sale. Mr. Trehan assured Bailey the contract would only be used to obtain coop board approval.

Bailey acceded and executed three sales contracts dated August 7, 1981 by signing "per proc Von Tarkanyi", followed by his own name. He did so without Von Tarkanyi's approval and without exhibiting to Trehan a power of attorney authorizing him to act on Von Tarkanyi's behalf. Trehan testified that at that time he believed Bailey had the authority to sign on Von Tarkanyi's behalf, but subsequently learned that the power of attorney ran only to Unigulf corporate matters.

Bailey also drew a Unigulf corporate check for the $19,000 deposit made payable to the real estate broker. Accompanying the check was a letter from Lester Hyman, a Washington attorney stating "the check will be held in escrow by the broker ... without negotiating same" and that if a mutually acceptable contract was not negotiated within the next twenty-one days, the deposit would be returned.

On August 12, 1981, Mr. Spizz informed the Bankruptcy Court and creditors that the contract had been signed but he had not seen the power of attorney.

Initially, the August 7, 1981 contract signed by Bailey had a September 30, 1981 closing date and was subject to the contingency of procuring a $1,425,000 mortgage. However, the Trehans were informed that only an all cash sale would be acceptable to the court and creditors and that the alternative would be that the apartment would be auctioned by the Bankruptcy Court. The Trehans' were also informed that they must produce Bailey's power of attorney.

On August 27, 1981, Mr. Spizz submitted to the Court an amended contract of sale which he stated had been executed by Bailey that day. That contract was merely a redacted version of the August 7, contract with handwritten changes. Mr. Spizz represented that the mortgage contingency clause had been deleted, thus converting the transaction to an "all cash deal". However, the District Court questioned the validity of this amendment because while the mortgage contingency clause was crossed out of the amended contract, the word "stet" appeared in the margin, which ordinarily indicates the provision is to stand.

In addition, on August 27, 1981 Mr. Spizz submitted an unsigned telex dated August 26, 1981 with a printed notation that it was from Mr. Von Tarkanyi which read "cfming yr specific power of attorney to execute documents per my purchase of apartment in River House for one million nine hundred thousand dollars." However, because the creditors remained skeptical as to the bona fides of the Von Tarkanyi contract, the bankruptcy court ordered the advertisement of the apartment and the submission of bids to the Court.

At the hearing before the District Court Mr. Von Tarkanyi denied sending this telex. He testified that he returned to New York on August 28, 1981, unaware of the events which had transpired. He also testified that it was only upon his return that he learned for the first time the Trehans were in bankruptcy and that a mortgage of $1,400,000 could not be obtained. Because of these developments, he concluded negotiations were at an end and the Trehans were so advised.

The Trehans then obtained a contract of sale for $1,400,000, which was approved by the Bankruptcy Court on September 21, 1981.

On October 6, 1981, the Trehans, represented by NKLS, filed an adversary proceeding in the Bankruptcy Court against Von Tarkanyi and made service by regular

mail addressed to the Unigulf office in New York. The complaint alleged that Von Tarkanyi breached the contract of sale and sought the sum of $450,000 as damages, the difference between the Von Tarkanyi contract price and the price for which the apartment was actually sold.

In late October, 1981 Von Tarkanyi returned to New York and learned of the adversary proceeding. It was then that Von Tarkanyi learned for the first time that Bailey signed the contract of sale, without authority, and delivered the $19,000 deposit. Mr. Von Tarkanyi testified that he was never shown a copy of the complaint and that he believed the suit involved Unigulf's liability for the $19,000 corporate check, not his personal liability.

Soon thereafter, Von Tarkanyi met with Leon Harris, an attorney and discussed the complaint. Harris told Mr. Von Tarkanyi that his only exposure was for the $19,000 deposit. Mr. Von Tarkanyi testified that he did not retain Mr. Harris. However, on October 30, 1981 Mr. Harris filed an answer to the complaint.

The now uncontroverted District Court record demonstrates that at the least Mr. Trehan perpetrated a fraud on the court by submitting a "phony" power of attorney purporting to authorize Bailey to sign the contract of sale and by filing a forged amended contract purporting to delete the disabling mortgage contingency clause. The record demonstrates that the Trehans knew both documents were forgeries.

*The Bankruptcy Court Findings—NKLS' Conduct*

*Background* [1]

1. Alex Spizz is an attorney who has been a member in good standing since approximately 1973 of the bar of the State of New York, the United States Court of Appeals for the Second Circuit, and the United States District Courts for the Southern and Eastern Districts of New York. (Tr. 10–11)

2. Mr. Spizz is a member of the law firm Nachamie, Kirschner, Levine & Spizz,

P.C. and in 1981 was a member of its predecessor firm Arutt, Nachamie, Benjamin, Lipkin & Kirschner. (Tr. 11–12; DXL)

3. In 1981, Mr. Spizz represented Surinder and Grace Trehan as Debtors in Possession in a Chapter 11 bankruptcy case in this Court. (Tr. 12)

*The Riverhouse Apartment*

4. The Trehans' principal asset was shares of a coop apartment located at 435 East 52nd Street, New York, New York (the "Riverhouse Apartment"). On or about July 29, 1981, Mr. Spizz was informed that the Trehans had found a buyer for the Riverhouse Apartment for the price of $1,900,000. (Tr. 13–15; DXA)

*Mr. Spizz Sees the Contract of Sale for the First Time*

5. On or about August 7, 1981, Mr. Trehan showed Mr. Spizz a signed contract of sale for the Riverhouse Apartment to Anton Von Tarkanyi. Mr. Spizz did not participate in the drafting of the contract of sale. (Tr. 15–16, DXX)

6. After reviewing the contract of sale, Mr. Spizz told Mr. Trehan he perceived the following problems: (1) it was not signed by the buyer Mr. Anton Von Tarkanyi, but by a Mr. Bailey "per proc Mr. Von Tarkanyi"; (2) the contract, which provided for an immediate down payment of 1 percent of the purchase price and 9 percent after 30 days, would probably not be acceptable to the Bankruptcy Court, and the Court would probably require a 10 percent down payment upon Court approval; and (3) the contract, which contained a mortgage contingency clause, would probably not be acceptable to the Bankruptcy Court, and the Court would probably require an all-cash contract. (Tr. 18–20 DXX)

7. Mr. Spizz testified that Mr. Trehan's response was that: (1) Mr. Bailey had Mr. Von Tarkanyi's power of attorney; and (2) Mr. Trehan would talk to Messrs. Bailey and Von Tarkanyi and have the contract changed to provide for the full 10 percent deposit upon Court approval and delete the

---

**1.** References are to page numbers in the transcripts of the July 13, 1987 hearing ("Tr"), the August 26, 1987 hearing ("2d Tr.") and the Octo-

ber 7, 1987 hearing ("3d Tr.") before this Court, and to the exhibits introduced into evidence ("DX").

mortgage contingency clause in paragraph 21. (Tr. 18–20 DXX)

8. Trevor Bailey was an employee of Unigulf Petroleum Inc. ("Unigulf"), Mr. Von Tarkanyi's company, which had offices at 645 Fifth Avenue, New York City. (Tr. 19, 3d Tr. 4)

*Mr. Spizz Shows the Court and Creditors' Attorneys the Contract of Sale for the First Time at the August 12, 1981 Hearing*

9. At an August 12, 1981 hearing before this Court, Mr. Spizz showed a copy of the contract of sale to the Court and to the attorneys for the Trehans' creditors. Mr. Spizz told the Court that: (1) Mr. Von Tarkanyi was out of the country; (2) Mr. Bailey, who executed the contract of sale, was Mr. Von Tarkanyi's business partner and had his power of attorney; and (3) Mr. Spizz did not yet have the written power of attorney, but would produce it. The Court scheduled a September 3, 1981 hearing for approval of the contract. (Tr. 20–22)

*Sulzberger–Rolfe Receives the $19,000 Deposit Check*

10. By August 12, 1981, Mr. Spizz saw a copy of a Unigulf check payable to Sulzberger–Rolfe (the real estate brokers for the Riverhouse Apartment) for $19,000 (*i.e.*, 1 percent of the purchase price). Mr. Spizz testified that he believed that this was a *bona fide* check representing Mr. Von Tarkanyi's initial deposit for the Riverhouse Apartment. I find that the record supports a finding that his belief was reasonable. (Tr. 22–24; DXD and E)

*Sulzberger–Rolfe Receives the $171,000 Unigulf Check and Mr. Spizz So Informs the Court*

11. On August 25, 1981, a hearing was held before this Court on a motion by a creditor of the Trehans' to convert the Chapter 11 case into a Chapter 7 case. At this hearing, Mr. Spizz informed the Court that Ronnie Lane, a broker at Sulzberger–Rolfe, told him they had received a Unigulf check for $171,000 representing the balance of the 10 percent deposit on the Riverhouse Apartment. (Tr. 24–27; DXG)

12. Shortly prior to this hearing, Mr. Spizz was notified by letter from a Mr. Ostrow of Unigulf that Mr. Von Tarkanyi was out of the country and would return to New York on August 26, 1981. Upon Mr. Spizz's application, the Court adjourned the hearing to August 27, 1981. (Tr. 25–27; DXF)

*Mr. Von Tarkanyi's Attorney Assures Mr. Spizz that Mr. Bailey Was Empowered to Sign the Contract of Sale*

13. Between August 12 and 25, 1981, Mr. Spizz spoke on the telephone with Lester Hyman—Mr. Von Tarkanyi's attorney (DXH)—and asked whether Mr. Bailey had the power of attorney authorizing him to sign the contract of sale for Mr. Von Tarkanyi. Mr. Spizz testified that Mr. Hyman assured him that Mr. Bailey did have such power of attorney. (Tr. 27–28)

*The Power of Attorney Telex Is Presented to the Court and the Creditors' Counsel*

14. On August 27, 1981, prior to a 2 p.m. hearing before this Court, Mr. Trehan told Mr. Spizz that: (1) he had a letter from Mr. Bailey stating that Mr. Von Tarkanyi was still out of the country and a telex from Mr. Von Tarkanyi to Mr. Bailey confirming Bailey's authority to enter into the contract of sale; and (2) he had a meeting scheduled for that afternoon at Unigulf at which time the changes to the contract of sale suggested by Mr. Spizz would be made. Mr. Trehan then gave Mr. Spizz the letter from Mr. Bailey and the power of attorney telex. The record demonstrates that Mr. Spizz was given no reason to doubt the genuineness of either document. (Tr. 31–33; DXI and J)

15. The August 27, 1981 hearing commenced at 2 p.m. Mr. Spizz told the Court and the creditors' counsel that: (1) Mr. Von Tarkanyi was still out of the country (*See* DXI); and (2) checks for the full 10 percent deposit had been received by Sulzberger–Rolfe. Mr. Spizz also produced the power of attorney telex. At the time of the August 27, 1981 hearing, Mr. Spizz was not aware whether either of the Unigulf checks had been dishonored, returned, collected or negotiated. (Tr. 33–35)

*The All–Cash Contract Is Presented to the Court And the Creditors' Counsel. Neither Mr. Spizz Nor the Creditors' Counsel Nor Anyone Else Notices the Word "Stet" Near Paragraph 21 of the Contract of Sale*

16. Shortly after the conclusion of the August 27, 1981 hearing, Mr. Trehan appeared in court with the original contract of sale marked with handwritten changes deleting paragraph 21, the mortgage contingency clause. (Tr. 16–17; DXB) Mr. Spizz did not represent to the Court that a totally new contract of sale had been entered into, but rather that the original contract of sale had been amended. (2d Tr. 24–26)

17. Mr. Spizz showed the amended contract of sale to the Court and to creditors' attorneys and advised the parties that the contract had been amended to delete the financing provision. Mr. Spizz testified that he was not then cognizant of what appears to be the word "stet" handwritten near paragraph 21 of the amended contract of sale. Mr. Spizz testified that he did not become aware of this language until approximately June 25, 1986, during the hearing before the District Court. The scrivener and timing of the word "stet" was never established.

18. Furthermore, on August 28, 1981, Mr. Spizz mailed to all creditors and parties in interest notices of the sale to Mr. Von Tarkanyi, with copies of the amended contract of sale and the power of attorney telex. No one to whom those documents were shown or sent mentioned to Mr. Spizz or this Court that the word "stet" appeared by paragraph 21. (Tr. 36–41; DXK) Thus, I find that this record establishes that Mr. Spizz reasonably concluded that the August 27, 1981 changes to the contract of sale converted the contract to an "all cash" deal.

19. The Court scheduled a hearing for September 8, 1981 on the sale of the shares of the Riverhouse Apartment, which was subsequently adjourned to September 15, 1981. (Tr. 41) Mr. Spizz testified that he believed that the amended contract of sale was valid and enforceable, and that Mr. Von Tarkanyi would be in Court on September 15, 1981 to bid. I find that the credible evidence establishes that his belief was reasonable. (Tr. 41–42).

*Mr. Spizz Learns for the First Time that the $19,000 Unigulf Check Had "Bounced", and So Informs the Court and the Creditors' Counsel*

20. Between September 8 and 15, 1981, Mr. Spizz learned that the $19,000 Unigulf check representing the first payment of the deposit for the Riverhouse Apartment had been returned for insufficient funds. Paragraph 3 of the contract of sale provided that the $19,000 deposit was "subject to collection." Mr. Spizz was unaware of any arrangement to the contrary. (Tr. 28–30, 42–43; DXB and E) Although Mr. Spizz was shown a copy of a letter dated August 4, 1981 from Mr. Von Tarkanyi's counsel to Ronnie Lane of Sulzberger–Rolfe, which provided that the $19,000 deposit "will be held in escrow by the broker, Sulzberger–Rolfe, without negotiating same", he testified that he did not learn of this letter until the 1986 District Court hearing Court. (Tr. 28–30; DXH)

21. In addition, during this time, Mr. Von Tarkanyi failed to take the steps called for in paragraph 6 of the contract of sale to obtain coop board approval. (Tr. 54–55)

22. Prior to the September 15, 1981 hearing, Mr. Spizz advised the Court and the creditors' counsel that the $19,000 Unigulf check had bounced and that this was a breach of the contract by Mr. Von Tarkanyi, but that the Trehans were nevertheless prepared to proceed with the sale. At no time did Mr. Spizz attempt to avoid an auction of the Riverhouse Apartment. (Tr. 43; 2d Tr. 24)

23. On September 15, 1981, the Court conducted an auction of the Riverhouse Apartment, which culminated in a contract of sale between Mr. Trehan and a buyer named Ms. Cisneros. The price was $1,450,000—$450,000 less than the purchase price in the Von Tarkanyi contract. This contract was approved by the Bankruptcy Court and the Riverhouse Apartment was sold to Ms. Cisneros. (Tr. 44)

*The Breach of Contract Suit*

24. Shortly after the Court approved the sale of the Riverhouse Apartment to Ms. Cisneros, Mr. Trehan told Mr. Spizz that he wanted to commence a lawsuit against Mr. Von Tarkanyi for breach of contract. On or about October 2, 1981, the suit was commenced by filing the complaint with the Bankruptcy Court. Mr. Spizz signed the complaint on behalf of his firm. (Tr. 45–46, 55–56; DXL)

*Mr. Spizz's Compliance with Fed.R.Civ.P. 11*

25. Based upon the credible, unrebutted testimony and the law as it then stood, I find that at the time the complaint was filed Mr. Spizz reached the reasonable conclusion that: (1) the Bankruptcy Court had jurisdiction over the adversary proceeding pursuant to former 28 U.S.C. § 1471; (2) Mr. Von Tarkanyi was a resident of New York, based on the fact that the contract of sale stated that he resided at "645 Fifth Avenue, New York, New York, 10022" (DXB); (3) the power of attorney telex was genuine and Mr. Bailey was authorized to sign the contract of sale; (4) the Trehans had full capacity to enter into the contract of sale for the Riverhouse Apartment; (5) because the $19,000 deposit check bounced, paragraph 15 of the contract—the liquidated damages clause—failed of its purpose, was unenforceable, and the measure of damages was the difference between the contract price and the sale price; (6) the obtaining of coop board approval was the purchaser's obligation under the contract of sale and Mr. Von Tarkanyi's failure to take any steps towards fulfillment of that obligation did not invalidate the contract; (7) the deletion of the mortgage contingency clause from paragraph 21 was *bona fide* and converted the contract of sale into an "all-cash deal"; (Tr. 45–48, 50–56) (8) the contract of sale was valid and enforceable.

26. I also find that the record establishes that Mr. Spizz interposed the complaint after a reasonable investigation, in good faith and not for any vexatious or improper purpose. (Tr. 45–48, 50–56)

*An Answer Is Interposed Based on Information Given by Mr. Von Tarkanyi to His Counsel*

27. On or about October 16, 1981, Leon Harris, an attorney with the law firm of Northrop & Jessup, met with Mr. Von Tarkanyi. Mr. Von Tarkanyi personally gave a copy of the complaint to Mr. Harris. Mr. Von Tarkanyi did not tell Mr. Harris that he thought the suit was against Unigulf and not against him personally. (3d Tr. 4–7)

28. At that meeting, Mr. Harris and Mr. Von Tarkanyi reviewed the averments in the complaint. Mr. Harris testified that he was retained by Mr. Von Tarkanyi to represent him in the within adversary proceeding. (3d Tr. 8)

29. On or about October 30, 1981, an answer was interposed by Mr. Harris based upon information given to him by Mr. Von Tarkanyi. The answer admitted that: (1) Mr. Von Tarkanyi was a resident of the State of New York; (2) the contract of sale was signed by an attorney in fact; and (3) the $19,000 Unigulf check to Sulzberger–Rolfe was issued on behalf of Mr. Von Tarkanyi. Additionally, the answer did not contain an affirmative defense contesting jurisdiction. (Tr. 48–49; 3d Tr. 8–10; DXM)

30. At their initial meeting, Mr. Harris advised Mr. Von Tarkanyi that his liability would be limited under the contract's liquidated damages clause to the $19,000 deposit. However, Mr. Harris testified that he was unaware that an additional $171,000 check had been deposited, making the full deposit $190,000. Mr. Harris testified that had he been aware of this, he would have told Mr. Von Tarkanyi that the extent of his liability was the full $190,000 deposit. (3d Tr. 10–13)

31. No motions for summary disposition were made by Mr. Harris on behalf of Mr. Von Tarkanyi. (Tr. 50)

*Mr. Von Tarkanyi Fails to Attend His Deposition and Mr. Spizz Moves to Compel*

32. On or about March 1, 1982, in accordance with Rules 26 and 30 of the Fed-

eral Rules of Civil Procedure and former Bankruptcy Rules 726 and 730, Mr. Spizz caused to be served on Northrop & Jessup, as counsel for Mr. Von Tarkanyi, a notice to take Mr. Von Tarkanyi's deposition in New York City. No motion for a protective order was made on behalf of Mr. Von Tarkanyi. (Tr. 57; 3d Tr. 14; DXY)

33. Mr. Von Tarkanyi did not appear for his deposition on the noticed date. After numerous communications with Northrop & Jessup, Mr. Spizz filed a motion, returnable June 23, 1982, to compel Mr. Von Tarkanyi's attendance at a deposition or to strike the answer and defenses. (Tr. 57–59, 2d Tr. 4–5; DXO)

34. Mr. Spizz submitted and signed an affidavit in connection with the motion. Based upon the record and the credible testimony, I find that there were good grounds to support the motion and that a reasonable attorney could conclude, based upon existing law that there were good factual grounds to support the allegations in the affidavit. I also find the motion was not brought for any wrongful purposes nor with any intent to harass. (2d Tr. 7–8; DXQ)

35. Northrop and Jessup responded and cross-moved to be relieved as counsel. (2d Tr. 6)

36. On or about July 29, 1982, an order was issued disposing of the motion as follows: (1) the motion was granted unless Mr. Von Tarkanyi appeared at Mr. Spizz's offices for a deposition on August 23, 1982; and (3) Northrop & Jessup were to serve a copy of the order with notice of entry upon Mr. Von Tarkanyi. (DXP)

37. Mr. Spizz had no obligation under the order to serve Mr. Von Tarkanyi. (DXP)

38. Northrop & Jessup advised Mr. Von Tarkanyi of the disposition of the motion. (3d Tr. 18–20, DXZ)

39. Mr. Von Tarkanyi did not appear for the Court ordered deposition on August 23, 1982. (2d Tr. 8; 3d Tr. 20)

*Mr. Spizz Moves for a Default Judgment*

40. Thereafter, Mr. Spizz applied to the Bankruptcy Court pursuant to former Bankruptcy Rule 755 for a default judgment, based on the July 29, 1982 order and Mr. Von Tarkanyi's failure to appear for his deposition on August 23, 1982. The application sought damages in the amount of $450,000 as demanded in the complaint. (2d Tr. 8–9; DXQ)

41. On or about September 10, 1982, a default judgment was entered for $450,000 plus interest without any further notice to Mr. Von Tarkanyi and without an inquest. No appeal was taken. Mr. Spizz did not serve anyone with a copy of the judgment after its entry. (2d Tr. 8–12 DXR)

42. Mr. Spizz testified that in his opinion former Bankruptcy Rule 755 did not require the applicant for a default judgment to notify the defaulting party, nor did it require an inquest on damages where, as here, the damages were for a sum certain or a sum which could be made certain by calculation. (2d Tr. 10) In addition, Mr. Spizz testified that former Bankruptcy Rule 755 required the court and not the moving party to serve a copy of the default judgment immediately after entry. (2d Tr. 13)

*Mr. Von Tarkanyi's Motion To The Bankruptcy Court To Vacate The Default Judgment*

43. In November 1985, Mr. Von Tarkanyi moved before this Court to vacate the default judgment. (2d Tr. 14)

44. Mr. Spizz submitted and signed both an affidavit and memorandum of law in opposition to the motion. (DXS and T)

*Mr. Spizz's Compliance with Fed.R.Civ.P. 11*

45. Mr. Spizz testified that in order to prepare the response to that motion, he conducted a factual inquiry which included studying the results of a private investigator's report. Mr. Spizz also conducted legal research. (2d Tr. 16; DXS and T)

46. I find the record clearly supports a finding that the affidavit and memorandum submitted by Mr. Spizz were well grounded in fact and warranted by existing law. I also find that (1) Mr. Spizz's opinions were formed after a reasonable factual and legal inquiry; and (2) the affidavit and memoran-

dum were not interposed to harass, cause delay, increase the cost of litigation or for any other improper purpose.

47. On or about February 28, 1986, this Court denied Mr. Von Tarkanyi's motion.

48. The order of February 28, 1986 was never appealed. (2d Tr. 16–17; DXU)

*Mr. Von Tarkanyi's Second Motion To Vacate the Default Judgment*

49. On or about April 4, 1986, Mr. Von Tarkanyi made a motion to the District Court by order to show cause, seeking essentially the same relief sought in his November 1985 motion to the Bankruptcy Court. (2d Tr. 17)

50. In opposition to that motion, Mr. Spizz submitted and signed an affidavit and memorandum of law. (2d Tr. 18; DXV and W) Mr. Spizz testified that in connection with his preparation of the papers submitted to the District Court he conducted a factual inquiry and conducted legal research. (2d Tr. 18–19)

*Mr. Spizz's Compliance With Fed.R.Civ.P. 11*

51. Based upon Mr. Spizz's credible testimony, I find that the affidavit and memorandum submitted to the District Court were filed after a reasonable inquiry and were well grounded in fact and warranted by existing law. I further find that the affidavit and memorandum were not interposed for any improper purpose such as to harass, to cause unnecessary delay, to increase the cost of litigation.

*The Hearings before Judge Pollack*

52. A two-day hearing on the motion was held before Judge Pollack. Because of a very serious illness in his family, Mr. Spizz was unable to attend the morning session of the first day. An associate from Mr. Spizz's firm with no knowledge of the case appeared and applied for an adjournment. The application was denied. Mr. Spizz was present for the remainder of the hearings. (2d Tr. 19–20)

## CONCLUSIONS OF LAW

*The Scope of F.R.Civ.P. 11*

1. Before August 1, 1983, Rule 11 applied only to the signing of pleadings ("Old Rule 11"). *See* Prior F.R.Civ.P. 11; *F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1268 (2d Cir.1987).

2. As of August 1, 1983, Rule 11 was amended to apply to the signing of pleadings, motions and other papers ("New Rule 11"). *See* F.R.Civ.P. 11; *F.H. Krear & Co.,* 810 F.2d 1268. In addition, under New Rule 11, if a pleading, motion or other paper is signed in violation of this rule the court may impose sanctions upon the person who signed it, a represented party or both.

*The F.R.Civ.P. 11 Standard*

3. Under Old Rule 11 the imposition of sanctions would be proper "only where there was a showing of bad faith, and the only proper inquiry was the subjective belief of the attorney at the time the pleading was signed." *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 253 (2d Cir.1985) *cert. den.,* —— U.S. ——, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987) (citations omitted); *see also Nemeroff v. Abelson,* 620 F.2d 339, 350 (2d Cir.1980). This dictates that the attorney who signs the pleading "represent[s] his honest belief that there is good ground to support the claims asserted in the pleading." *Levy v. Seaton,* 358 F.Supp. 1, 6 (S.D.N.Y.1973).

4. Under New Rule 11, "sanctions must be awarded when a competent attorney could not have formed a belief after reasonable inquiry that the claims were 'warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.' This objective standard does not require a finding of bad faith." *Norris v. Grosvenor Marketing Ltd.,* 803 F.2d 1281, 1288 (2d Cir.1986) (citations omitted); *see also Eastway,* 762 F.2d at 254.

5. Under New Rule 11 "sanctions are to be imposed when a competent attorney could not form the requisite reasonable belief as to the validity of what is inserted in the paper." *Nassau–Suffolk Ice Cream, Inc. v. Integrated Resources, Inc.,* 114 F.R.D. 684, 689 (S.D.N.Y.1987). The determination of whether a reasonable inquiry was conducted depends on the interrelationship

among a number of factors such as "how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading ... whether the pleading ... was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar." Advisory Committee Note of 1983 to Amended Rule 11. "When an attorney must rely on his client he should question him fully, not relying on faith alone." *Nassau–Suffolk Ice Cream, Inc, et al v. Integrated Resources Inc.*, 114 F.R.D. at 689. *See also, Kamen v. American Telephone & Telegraph Co.*, 791 F.2d 1006, 1012 (2d Cir.1986).

6. "[A]n attorney does not violate Rule 11 by relying on representations of a client, even where the court refuses to credit those representations at trial." *R.K. Harp, Inv Corp. v. McQuade*, 825 F.2d 1101, 1103–04 (7th Cir.1987); *see also District No. 8 v. Clearing*, 807 F.2d 618, 622 (7th Cir.1986).

7. "[T]he imposition of sanctions [under Rule 11] must be divorced from the ultimate disposition of the underlying action." *R.K. Harp, Inc. Corp. v. McQuade*, 825 F.2d 1103.

8. Under New Rule 11, sanctions are normally imposed against the lawyer, but may be imposed against the client as well. *Thornton v. Wahl*, 787 F.2d 1151, (7th Cir. 1986), *cert. den.*, —— U.S. ——, 107 S.Ct. 181, 93 L.Ed.2d 116 (1986). Sanctions may be imposed upon a client that is the catalyst behind a pleading interposed for an improper purpose. *Chevron, U.S.A. Inc. v. Hand*, 763 F.2d 1184, 1187 (10th Cir.1985). If a pleading, motion or other paper is signed in violation of New Rule 11, the court may fashion an appropriate sanction, including a reasonable attorney's fee. The purpose of Rule 11 is to "discourage dilatory or abusive tactics and help streamline the litigation process by lessening frivolous claims and defenses." Advisory Committee Notes of 1983 Amendments to Rule 11.

*The Proper Scope of this Court's Inquiry*

9. In determining whether Rule 11 sanctions should be imposed upon NKLS, this Court's inquiry is limited to: (a) an analysis under the Old Rule 11 standard of the circumstances surrounding Mr. Spizz's signing the complaint (DXL); and (b) an analysis under the New Rule 11 standard of the circumstances surrounding Mr. Spizz's signing the January 17, 1986 affidavit and memorandum in opposition to the motion made in the Bankruptcy Court to vacate the default (DXS and T). This court will leave to the District Court the determination as to whether sanctions should be imposed based upon the circumstances surrounding the submission of the affidavit and memorandum to the District Court. (DXV and W).

*Mr. Spizz's Compliance with Old Rule 11*

10. Based upon Mr. Spizz's testimony, which I found to be highly credible, as bolstered by the documentary evidence, I find that the record establishes that Mr. Spizz did not sign the complaint (DXL) in bad faith nor did he interpose it for any improper reason. I further find the record establishes that at the time the complaint was signed, to the best of Mr. Spizz's knowledge, information and belief there were good grounds to support the claims asserted in the complaint.

11. Mr. Spizz did not violate Old Rule 11 and was in full compliance therewith.

*Mr. Spizz's Compliance with New Rule 11*

12. I also find that the record establishes that at the time Mr. Spizz signed the affidavit and memorandum in opposition to Mr. Von Tarkanyi's motions in the bankruptcy court to vacate the default (DXS, T, V and W), he conducted a reasonable inquiry as to the statements contained therein, and that they were well grounded in fact and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law. A competent attorney could have formed such a belief. I further find that the record establishes that the opposition papers were not interposed for any improper purpose.

13. Mr. Spizz did not violate New Rule 11 and was in full compliance therewith.

*The Trehans' Compliance with New Rule 11*

14. In light of the fraud perpetrated upon the Court by the Trehans in connection with the adversary proceeding, I find that the Trehans' bad faith conduct in perpetuating the original fraud by resisting the motion to vacate the default before the Bankruptcy Court violates New Rule 11.

*Additional Points of Law Supporting the Allegations in the Complaint*

15. In October 1981, 28 U.S.C. § 1471 gave this Court jurisdiction over "all civil proceedings arising under title 11 or arising in or related to cases under title 11" and "exclusive jurisdiction over all of the property, wherever located, of the debtor, as of the commencement of such case." Accordingly, this Court had jurisdiction under 28 U.S.C. § 1471 to hear the Trehan's adversary proceeding for breach of contract, Adv. No. 81–5656A.

16. The sale of shares in the Riverhouse Apartment cooperative was governed by Article 2 of the Uniform Commercial Code. *See Silverman v. Alcoa Plaza Assoc.*, 37 A.D.2d 166, 170, 323 N.Y.S.2d 39 (1st Dept. 1971).

17. The contract of sale's liquidated damages clause provided that the Trehans' damages would be limited to Mr. Von Tarkanyi's deposit. When the $19,000 Unigulf check bounced, the liquidated damages clause failed of its essential purpose and the Trehans were entitled to claim the difference between the contract price and the ultimate sale price. *See* N.Y.U.C.C. § 2–719(2).

18. While the contract of sale was subject to Bankruptcy Court approval, the Trehans as Debtors in Possession still had the capacity to enter into the contract before obtaining court approval. Even before Court approval, Mr. Von Tarkanyi was bound and could not breach or unilaterally withdraw from the contract of sale with impunity. *See Freehill v. Greenfeld*, 204 F.2d 907, 908–09 (2d Cir.1953); 4B *Collier on Bankruptcy* par. 70.98[16] at 1173–74 (14th ed.)

19. Paragraph 6 of the contract of sale provided that it was Mr. Von Tarkanyi's obligation to secure coop board approval. Mr. Von Tarkanyi failed to take any steps to secure such approval and cannot rely on his own inaction and breach to avoid the contract of sale. *See Gaffin & Mayo v. Mok*, 106 A.D.2d 320, 482 N.Y.S.2d 765 (1st Dept.1984); *see also Edmund J. Flynn Co. v. Schlosser*, 265 A.2d 599 (D.C.1970); 5 *Williston on Contracts* § 677 (3d ed.).

20. The August 27, 1981 amendment to the contract of sale deleting the mortgage contingency clause in paragraph 21 converted the contract to an "all cash deal." However, even if the contract of sale did have a mortgage contingency clause, the obtaining of a mortgage was Mr. Von Tarkanyi's obligation. The obtaining of a mortgage was not a condition precedent, but a condition subsequent. *See Falk v. Goodman*, 7 N.Y.2d 87, 91, 195 N.Y.S.2d 645, 647, 163 N.E.2d 871, 873 (1959). No steps were taken to fulfill this obligation. Mr. Von Tarkanyi could not use his own willful failure to perform the condition subsequent to avoid the contract of sale. *See id.*

21. Former Bankruptcy Rule 704(c)(1) provided for service of a summons and complaint within the United States, upon a person by mailing a copy of the summons and complaint by regular mail addressed to the person's dwelling or to the place where he regularly resided. Mr. Spizz properly served the complaint upon Mr. Von Tarkanyi in accordance with Rule 704(c)(1) by mailing a copy of the summons and complaint to the New York address listed as Mr. Von Tarkanyi's address in the contract of sale. *See* Findings of Fact par. 25.

22. In accordance with F.R.Civ.P. 30 and Bankruptcy Rule 730, a notice of deposition may be served upon another party without the need for the issuance of a subpoena to compel attendance. In the first instance, the plaintiff may choose the location for the defendant's deposition. However, *if a motion for a protective order is timely filed*, the court has broad discretion to designate the location of the deposition in the interest of justice. *See*, 4

*Moore's Federal Practice* par. 26.70 [1.–3] (2d ed.); 4A *Moore's Federal Practice* par 30.55 [1]. "Although the federal rules do not prevent plaintiff's designation of any place he chooses for the taking of a defendant's deposition, the cases indicate that it is presumed that a defendant will be examined at his residence or at his place of business or employment; if another place is named and defendant files a timely objection, the objection should be sustained absent some unusual circumstances to justify putting the defendant to such inconvenience." *Grey v. Continental Marketing Associates, Inc.*, 315 F.Supp. 826, 832 (N.D. Ga.1970). In accordance with the aforesaid rules, Mr. Spizz properly scheduled Mr. Von Tarkanyi's deposition in New York City. Inasmuch as Mr. Von Tarkanyi did not file a motion for a protective order, he was compelled to attend the deposition.

*Additional Points of Law Supporting The Procedure for a default Judgment Under Former Bankruptcy Rule 755*

23. Former Bankruptcy Rule 755 did not require the Trehans to notify Mr. Von Tarkanyi of their application for a default judgment or of the entry of the default judgment itself. *See* former Bankruptcy Rule 755 and Advisory Committee's Notes; *Whittlesey v. Weyerhauser Co.*, 640 F.2d 739, 741 n. 2 (5th Cir.1981) ("[N]o notice was necessary for the bankruptcy judge to enter a default judgment.").

24. Because the complaint sought a sum certain or a sum which could be made certain by calculation, no inquest on damages was required. *See e.g., Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir.1974); *Systems Industries, Inc. v. Han*, 105 F.R.D. 72, 74–75 (E.D.Pa.1985).

25. Rule 60(b) of the Federal Rules of Civil Procedure establishes grounds upon which the Court may exercise its equitable power to bar enforcement of a judgment obtained in that proceeding. Rule 60(b) specifically reserves the court's inherent right to set aside a judgment obtained through fraud upon the court. 7 *Moore's Federal Practice* par 60.33 (2d ed 1987). The Second Circuit Court of Appeals has stated the meaning of "fraud upon the Court"

> has not been much elucidated by decisions. Obviously it cannot be read to embrace any conduct of an adverse party of which the court disapproves; to do so would render meaningless the one year limitation on motion under F.R.Civ.P. 60(b)(3). See 7 *Moore's Federal Practice* par. 60.33 at 511 (1971 ed.) Professor Moore submits that the concept should "embrace only that species of fraud which does or attempts to defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication."

*Kupferman v. Consolidated Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972). "Every element of the fraud here disclosed demands the exercise of the historic power of equity to set aside fraudulently begotten judgments." *Hazel–Atlas Co. v. Hartford Co.*, 322 U.S. 238, 245, 645 S.Ct. 997, 1001, 88 L.Ed. 1250 (1944), *overruled* on other grounds, *Standard Oil Co. of California v. United States*, 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976).

*Conclusion Upon Reconsideration*

26. As a result of the fraud perpetrated by the Trehans the default judgment is void and must be set aside as a nullity.

27. For the willful violation of Rule 11 established in the record before the District Court, the appropriate sanction is to strike the Complaint filed by the Trehans commencing the within adversary proceeding and to order the Trehans' to pay Von Tarkanyi $5,000. for attorney's fees.

28. Neither Nachamie, Kirschner, Levine & Spizz, P.C. nor Alex Spizz violated Fed.R.Civ.P. 11. The imposition of sanctions is not warranted.

The foregoing Proposed Findings of Fact and Conclusions of Law are hereby respectfully submitted to the District Court.

(s) Burton R. Lifland
Chief United States Bankruptcy
Judge